# CHARLESTON.

## MARION NATIONAL BANK V. HARDEN.

Submitted October 15, 1918.　Decided November 15, 1918.

1. BILLS AND NOTES—*Purchaser in Due Course.*

   Where more than one note is executed and it is stipulated therein or in the security given therefor that failure to pay any one of the notes when due will automatically mature all the others, such stipulation will be given effect according to its terms, and a purchaser of such notes with notice after such maturity will thereby be deprived of the rights of a purchaser in due course.　(p. 122).

2. SAME—*Good Faith—Knowledge of Facts.*

   On the question of "good faith and for value" required of a purchaser in due course, mere knowledge of facts sufficient to, create suspicion, without actual knowledge, will not deprive him, of the rights of a purchaser in due course, but if the facts, circumstances and conditions attending his purchase are so cogent and obvious that to remain passive amounts to bad faith on his part and show bad faith on the part of the seller, the purchaser will be deprived of the status of holder in due course.　(p. 124).

3. SAME—*Credit on Depositor's Account While in Due Course—Fraud.*

   The mere crediting by a bank to a depositor's account of the proceeds of a note will not constitute the bank a holder in due course when after non-payment the amount remains to the credit of such depositor.　And if the instrument was given for the price of property sold and the sale and purchase thereof was manifestly to prevent the defense of breach of warranty, the transaction will be regarded fraudulent.　In such a case the transaction lacks the quality of a purchase in "good faith and for value" required of a purchaser in due course.　(p. 124).

4. SAME—*Negotiability—Assignment.*

   An assignment of "all right, title and interest in and to the within note" endorsed on the back of an instrument, being a qualified endorsement, in no way affects the negotiability of the paper, and the endorsee having possession thereof is deemed prima facie a holder in due course.　(p. 126).

Error to Circuit Court, Kanawha County.

Suit by the Marion National Bank against Silas Harden.

trading, etc.   Judgment for plaintiff, and defendant brings
error.                             *Reversed and remanded.*

*E. B. Dyer* and *Morgan Owen,* for plaintiff in error.
*Brown, Jackson & Knight,* for defendant in error.

MILLER, JUDGE:

Plaintiff doing business in the city of Marion, Indiana, as
endorsee sued defendant doing business as City Taxi Cab
Company at Charleston, West Virginia, as maker in assump-
sit upon seven notes, dated Marion, Indiana, August 6, 1915,
payable to the order of Harwood-Barley Manufacturing
Company, the endorser, in ten, eleven, twelve, thirteen, four-
teen, fifteen and sixteen months respectively, each for the
sum of one hundred and forty-nine and 37/100 dollars, at
Grant Trust and Savings Company, Marion, Indiana, each
note showing on its face that it was executed for the sale by
and purchase from the payee of certain Indiana Motor trucks
and certain motor truck parts, the title to any and all of
which property was thereby expressly declared to be and
remain in the payee or its assignee until the said notes should
be fully paid, with right to payee or assignee to take posses-
sion thereof if the maker should sell or dispose thereof before
maturity of the notes and hold the same and in default of the
note at maturity to sell same or any part thereof without fur-
ther notice, and to apply the proceeds to the payment of the
note, returning the excess to maker less expenses connected
with the sale.   The endorsements signed "Harwood-Barley
Mfg. Co., S. W. Winder, Sec'y." are as follows:  "Marion,
Ind. June 5, 1916, For value received we hereby assign, trans-
fer and set over to the Marion National Bank all our right
title and interest in and to the within note, and in and to the
said Indiana Motor Trucks for which said note was
executed."

Upon the trial and here upon writ of error awarded the
defendant to the judgment below against him the questions
presented by the pleadings and proof and by instructions to
the jury given and refused are: First, was there total or par-
tial failure of consideration for the notes as between maker
and payee thereof?   Second, were said notes procured from

maker by payee fraudulently? Third, was the plaintiff holder of said notes in due course as defined by §52, ch. 98A, Barnes' Code. 1918? Fourth, was there any error in the giving and refusing of instructions? Fifth, was the verdict of the jury supported by the weight and preponderance of the evidence, or did the court err in not sustaining defendant's motion to set aside the verdict and grant him a new trial?

That there was at least partial failure of consideration for the notes there is not a shadow of doubt. The notes were given in payment of the balance of the purchase price of a twenty passenger motor truck manufactured by the payee, and which was purchased by defendant for a particular purpose known to the manufacturer and its agent, who represented it to be suitable for and capable of doing the work desired. That it was practically useless for any purpose we think is proven beyond question. Defendant made every effort to test it out with the help of representatives of the manufacturer sent to Charleston to assist him. The engine and other parts of the machine were by request of the payee on the notes returned to the factory where an effort was made to make it good for the work, but without success. While these efforts to make the machine good were in progress one or two of the notes first falling due were paid, others of the series were disposed of to Grant Trust and Savings Company, the bank where payable, which sued as holder in due course and obtained judgment against defendant, which was paid by him, and the record shows that he had paid on said machine altogether about $2,000. The notes here sued on are the last of the series of sixteen notes, of which the payee still holds the four falling due in six, seven, eight and nine months from date, and which were all due and unpaid before the date of the alleged assignments of the last seven of the series to the plaintiff. This assignment occurred on the day before the first of these fell due, and payment of which as of the prior ones still held by the assignor or sued on by Grant Savings and Trust Company was, refused by defendant and the paper sued on thereby dishonored.

Another important fact is that besides the retention of title by the seller as evidenced by the notes, the maker on the same

day as further security for the payment thereof, executed to a trustee a deed of trust on the truck purchased, which was duly recorded in Kanawha County, West Virginia, where the machine was situated, which deed described the notes and among other things contained this provision: "The party of the first part covenants to pay each of the aforesaid notes when they become due and failure to pay any of the aforesaid notes when it becomes due shall cause all of the said notes to become due and payable."

We do not think the evidence sufficient to establish fraud in the procurement of the notes, but it does satisfy us beyond doubt that in disposing of the notes, some of them to Grant Savings and Trust Company and lastly the seven remaining of the series to plaintiff, the purpose of the Harwood-Barley Manufacturing Company was to defraud and defeat defendant in his lawful defense to the notes.

It is well settled by the laws of Indiana with reference to which the contract must be construed and the rights of the parties determined and elsewhere that when more than one note is executed and it is stipulated therein or in the security given therefor that failure to pay any one of the notes when due will automatically mature the others, such provision will be given effect according to its terms, and that a purchaser of any one of the notes after maturity of any prior one with notice will be thereby deprived of the rights of a purchaser in due course. 1 Daniel on Negotiable Instruments, (6th ed.), p. 924; Tiedman on Commercial Paper, §297; *Thorp v. Mindeman,* 123 Wis. 149; Joyce on Defenses to Commercial Paper, §468; *Moore v. Sargent,* 112 Ind. 484; *Rowe v. Scott,* (S. D.), 132 N. W. 695; *Hodge v. Wallace,* 129 Wis. 84. It is clear therefore that the notes sued on by the provisions in the deed of trust referred to, were due and payable before the plaintff claims to have purchased them in due course and if it had notice were subject to all equities between the maker and the payee thereof. The notes on their face make no reference to the deed of trust, but the payee by whom the deed was executed and to whom it was delivered, according to some of the authorities cited, was chargeable with notice of all the provisions thereof.

One of the pivotal questions presented is whether plaintiff became the holder of the paper in suit in due course. To occupy this status under our law, §52, ch. 98A, Barnes' Code, 1918, the following conditions must exist, (1) the instrument must be complete and regular on its face, (2) the holder must have purchased it before due, without notice that it had been previously dishonored, if that was the fact, (3) he must have taken it in good faith and for value, (4) when negotiated to him he must have had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Section 9088z1, Burns' Annotated Indiana Statutes, contains the same provisions, defining who is a holder in due course. And §9089c2 of the Indiana Statutes renders the title of the person who negotiates the instrument defective when he obtains the instrument or any signature thereto, by fraud, duress or force and fear, or other unlawful means, or for an unlawful consideration, or where he negotiates it in *breach of faith or under circumstances as amount to fraud.* And the next section, §9089d2, says that to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith.

On the question now under consideration we think the first requirement is satisfied; the notes appear regular on their face, and no controversy is presented thereon. On the second requirement it clearly appears that the notes when purchased were by the terms of the deed of trust past due and payment had been declined by the maker and the notes thereby dishonored; but the notes not referring to the deed of trust, or in terms making it a part of the contract, the question of prime importance is did the plaintiff have actual notice of the maturity and the dishonor of the notes or knowledge of such fact that its action in taking them amounted to bad faith? for in either event it cannot occupy the position of holder in due course.

On the question of actual notice to plaintiff its witness Rhue, vice president of the bank, with whom the Harwood-

Barley Manufacturing Company through Winder, its secretary, negotiated the notes swears, when asked whether he knew the notes thus negotiated were part of a series of notes given by Harden to the Harwood-Barley Manufacturing Company, answered that "from the notes it would indicate they were a part of a larger series." And when asked if he knew that payment of the notes was secured by a deed of trust dated August 10, 1915, given by Harden to Prichard, trustee, his answer was. "I probably did at the time, but I don't remember now about that." And asked whether he knew that the deed of trust showed that there were nine of the notes due before the first of those negotiated to him, he evasively answered, "My recollection would be that if I did observe that feature, that I probably took for granted that they had been previously paid." He said that he did not remember whether he asked Winder or any body connected with the Harwood-Barley Manufacturing Company whether they had been paid, although the first of the notes negotiated to him was due the next day. Immediately following these questions and answers he was asked whether when this series of notes was brought to him the day before the first was due he did not make diligent inquiry about them, and answered, "It might have been that we did not." When further asked if he did not know that upon default of payment of one note of the series all by the terms of the deed of trust became due and payable, his reply was, "I don't know that I did." Is it not reasonably certain that if he knew at the time he took the notes for the bank, as he said he probably did, that the notes were secured by a deed of trust, that he also knew of the provisions thereof? The evidence shows a close relationship between plaintiff and the Grant Trust and Savings Company, where the notes were made payable, in the handling of paper for the Harwood-Barley Manufacturing Company. What we shall have to say upon the third condition and the facts disclosed in relation thereto will also have a potent influence on the question of notice to plaintiff.

Respecting the third condition, "good faith and for value," the law is well settled that mere knowledge of facts

sufficient to put a prudent man on inquiry, without actual knowledge, or mere suspicion of an infirmity or defect of title does not preclude a transferee from occupying the position of a holder in due course, unless the circumstances and conditions are so cogent and obvious that to remain passive would amount to bad faith. 8 C. J. 501, and cases cited. And as we construe §9089d2 of the Indiana Statutes actual knowledge or knowledge of facts showing bad faith on the part of a party negotiating an instrument and the consequent defect or infirmity of his title, will constitute bad faith on the part of a purchaser and deny him the status of a holder in due course. Besides the facts alluded to in the preceding paragraphs including the suspicious circumstance of offering the notes for discount the day before the first fell due, we have the very important admission of the bank officers that they credited the Harwood-Barley Manufacturing Company with the sum of $1,097.53, principal and interest on the notes accrued to date. Another fact is that the bank claims to have issued to the Harwood-Barley Manufacturing Company its draft or check on New York on that day for the amount of the credit. This draft was not produced in evidence, but it is conceded that if so issued the draft was immediately indorsed back to the bank by the company and never left the bank or passed through the drawee in New York. Why all this circumlocution for so simple a transaction as the alleged purchase of the notes? The evident purpose was to make it appear that the bank had parted with something of value for the notes, instead of simply crediting its customer with the proceeds or principal and interest thereof, which was the real transaction. Moreover the evidence shows that at the time of this credit the company already had to its credit in the bank $5,869.90, and it does not appear from the record what became of these credits. It does appear that on the following day when the first of the notes sued on by its own provision became due and was not paid, the entire amount remained to the credit of the customer. We think these facts impute bad faith to both seller and purchaser and show infirmity in the right and title of both which is sufficient to deprive the bank of the rights of a purchaser in due course and for value.

Moreover it seems to be well settled that the mere crediting to a depositor's account on the books of a bank of the amount of a note or of a check drawn upon another bank where the depositor's account continues to be sufficient to pay the check in case it is dishonored, does not constitute the bank a holder in due course. 1 Daniel on Negotiable Instruments, (6th ed.), 908 et seq.; Joyce on Defenses to Commercial Paper, 243; *Union Nat. Bank* v. *Windsor,* 11 Amer. & Eng. Ann. Cases, 204; *Manufacturers Nat. Bank* v. *Newell,* 37 N. W. 422, 423. Of course the rule is different where something of actual value is parted with by the bank, or the purchaser gives credit for the note or check on an old debt etc. But we do not think the transaction involved here in law amounts to anything more than passing to the credit of the customer the amount of the principal and interest of the notes. It has been held that the negotiation of a note given for the price of property sold for the purpose of preventing the defense of breach of warranty constitutes fraud in its negotiation within the meaning of the statute. 8 C. J. 984; *Bushnell Bank* v. *Buck,* 161 Iowa, 362; *McKnight* v. *Parsons,* 15 Amer. & Eng. Ann. Cases, 665.

It follows from what has been said that the fourth condition to constitute the bank a holder in due course is also absent. The facts disclosed we think impute notice to the bank at the time of the transaction of infirmity in the title of the seller and deprive it of the rights of a purchaser in due course.

In a reply brief counsel for defendant make the point that by the words of the assignment "all our right title and interest in and to the within note" the endorsee acquired by substitution only such right as the endorser had, and not that of a purchaser in due course. The following are some of the authorities cited in support of this proposition: *Gall* v. *Mayhew,* 161 Mich. 96; 3 R. C. L. 569; Tiedman on Commercial Paper, §265; *Lyons* v. *Dwelbis,* 22 Pa. St. 185; *Ellsworth* v. *Varney,* 83 Ill. App. 94; 1 Daniel on Neg. Inst. 763; Mr. Daniel says: "In Michigan when the payee wrote on the back of the note 'I hereby transfer my right title and interest to the within note to S. C. Y.' the view has been

strongly presented that such a transfer was not an endorsement in the sense of the law merchant, but merely passed title, not rendering the assignor liable as an endorser in the event of due dishonor and notice." Citing *Aniba* v. *Yeomans*, 39 Mich. 171. But Mr. Daniel does not approve the rule of the Michigan cases. On the contrary he says in the same section that while such an endorsement is a qualified endorsement, it is a commercial endorsement and is not a mere assignment, and does not in law discredit the paper or even bring it under suspicion. And the other cases cited by him show that the great weight of judicial decisions is against the view of the Michigan court. And it seems to us that by a proper construction of sections 33 to 38 of our Negotiable Instrument Law, practically the same as the Indiana statute, no other conclusion can be reached. Section 33 says: "An endorsement may be either in blank or special; and it may also be either restrictive or qualified, or conditional." The definitions of each of these classes given in the succeeding sections clearly exclude the endorsements on the notes sued on, unless it be a qualified endorsement defind by section 38 as follows: "A qualified endorsement constitutes the endorser a mere assignor of the title to the instrument: it may be made by adding to the endorser's signature the words 'without recourse' or other words of similar import. Such an endorsement does not impair the negotiable character of the instrument." In *Evans* v. *Freeman*, 142 N. C. 61, the court distinctly holds that such an endorsement as we have under consideration here does not in any way affect the negotiability of the instrument and that the endorsee is deemed prima facie a holder in due course if he has possession of the note under such endorsement. Other decisions cited give the statute the same construction.

These conclusions justify in point of law the giving of the plaintiff's several instructions to the jury and the refusal of defendant's instructions numbered three and four, the third relating to the burden of proof, the fourth based on the theory of fraud on the part of the Harwood-Barley Manufacturing Company in procuring the defendant to execute the notes. On the theory of the latter we do not find evi-

dence of fraud, but of mistake in judgment only, not justifying the theory of actual fraud. But for the reasons set forth herein for sustaining the motion of the defendant to set aside the verdict and award him a new trial, as we have concluded the court below should have done, we think the court also erred in refusing his instructions numbered five and six.

For the foregoing reasons we reverse the judgment, set aside the verdict and remand the case for a new trial.

*Reversed and remanded.*