## 16464

MIMS v. NEHI BOTTLING CO. *ET AL.*
(63 S. E. (2d) 305)

*Messrs. John B. Culbertson, J. Wiley Brown* and *W. W. Wilkins,* all of Greenville, *for Appellant,*

514

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, *for Respondents,*

February 9, 1951.

TAYLOR, Jutice.

This cause was heard in the Circuit Court of Greenville County on appeal by the defendants, employer and insurance carrier respectively, from an award made by the South Carolina Industrial Commission in favor of plaintiff, the widow of J. Wylie Mims, who was killed by an explosion at the Ideal Laundry in the City of Greenville, South Carolina, on November 19, 1946.

The matter was heard by the Honorable J. Robert Martin, who issued his order, dated September 16, 1949, reversing the award of the South Carolina Industrial Commission and holding that the accident which resulted in the death of J. Wylie Mims did not arise out of and in the course of his employment with defendant, Nehi Bottling Company, within the terms of the South Carolina Workmen's Compensation Law. Code 1942, § 7035-1 *et seq.* From this order claimant now appeals to this Court.

At the time of his death and for some time prior to November 19, 1946, the deceased had been employed as general assistant to the owner and manager of the Nehi Bottling Company and in the absence of the owner and manager, Mr. R. A. Jolly, carried on the business of the company and did whatever he thought best for its interests. He had no definite work schedule but did whatever was necessary to promote the interests of the company which according to the testimony included promoting good will. It was his custom at the close of each day's business to place the outgoing mail in a mailbox on Main Street at the Ottaray Hotel. On the date in question, Mr. Jolly being out of town, Mr. Mims left the Nehi Bottling Company's place of business on Buncombe Street, driving a company truck, and proceeded along Bun-

combe Street toward the mailbox which was approximately one mile from his place of employment and on the direct route to his home. Approximately a quarter of a mile from the Nehi plant, Mr. Mims stopped the truck on Buncombe Street next to the curb and entered the plant of the Ideal Laundry which at that time was using propane gas as a fuel. The testimony further shows that the laundry was having difficulty with this gas as a large quantity was stored under pressure and a leak had developed, resulting in the gas escaping in a loud noise comparable to the popping off of a boiler.

Mr. Haynie, the owner of the laundry, testified that he was in his office talking to two of the employees when informed that the gas was escaping. He then proceeded through the building to a point where he could see what was happening. Whereupon he proceeded to the Fire Department which was located just across an alleyway approximately twelve feet from the laundry building. He then left the Fire Department and went back to where the gas was escaping and found that it was spreading like a heavy fog. He then called the gas company for the second time and hurried back to the Fire Department and insisted that they put water on the escaping gas. He then turned to go to the boiler room for the purpose of cutting off the burner under the boiler and the pilot lights in the boiler room. As he came out of the Fire Department, Mr. Mims approached and asked what the trouble was. Upon being informed that the gas was escaping, he inquired if it was dangerous. Whereupon he was told that it was very dangerous. Mr. Mims seeing a light in the wet wash department inquired, "Is anybody working in there?" Upon being answered in the affirmative, he stated, "I will go and run them out." Immediately thereafter, the employees of this department came hurrying from the building. Mr. Haynie then proceeded to call the gas company again, who advised that the Fire Department be required to put water on the escaping gas. As he started out to the side door of the building, he could see through the main building. All persons apparently had left. Mr. Haynie then started to

the Fire Department again and stated that he saw this vapor cross the alleyway to some Negro houses where he knew that open fires were kept in the fireplaces. The explosion resulted almost immediately. The next time he saw Mr. Mims, his body was lying across on the far side of Echols Street from the laundry building.

No products of the bottling company were sold in the laundry and there is ample testimony to support the finding of fact by the Hearing Commissioner, which was adopted by the full Commission "that for some reason unknown to anybody, Mr. Mims on the day of his death stopped his employer's truck in which he was riding and walked from his truck a few feet into the establishment of the Ideal Laundry. There is no testimony that at that time Mr. Mims had any realization or knowledge of the impending terrific explosion which occurred in a few minutes, in the plant of the Ideal Laundry, after Mr. Mims had arrived there. There is testimony that after Mr. Mims was on the premises and became aware that something was amiss and that the employees of the Ideal Laundry were in danger, he heroically undertook to warn the employees and assist in any way possible in preventing injury to anyone."

The burden is upon the claimant to prove the facts which render the injury compensable. *Radcliffe v. Southern Aviation School,* 209 S. C. 411, 40 S. E. (2d) 626. The Commission found that Mr. Mims visited the laundry "for some reason unknown to anybody." Admittedly he was in the course of his employment in carrying the mail from the Nehi plant to the mailbox on Main Street where it would be posted. There is no evidence that he was then about any other work for his employer, but on the other hand had closed the place of business for the day and was proceeding to his home with the intention of posting the mail en route. There is no showing that the posting of the mail required or was furthered by entering the laundry premises and no inferences to that effect arise from any of the proven

facts unless, as argued by appellants, Mr. Mims was in the act of promoting good will for the Nehi Bottling Company. No such showing has been made in the record. On the contrary, there is testimony to the effect that Mr. Mims was a close friend of some of the employees of the laundry and occasionally stopped to chat.

Appellant further contends that under the board power and authority to act for his employer that he was following the most direct route to posting the mail and that there is a natural presumption or presumption of fact that one charged with the performance of a duty and injured while performing such duty or found injured at a place where his duty may have required him to be is injured in the course of and as a consequence of the employment, and relies upon *Owens v. Ocean Forest Club, Inc.,* 196 S. C. 97, 12 S. E. (2d) 839; *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879; *Jordan v. Dixie Chevrolet Co.,* S. C., 61 S. E. (2d) 654; *Pelfrey v. Oconee County,* 207 S. C. 433, 36 S. E. (2d) 297. In the instant case, there is no showing that deceased was engaged in doing what was necessary to bring the mail to the mailbox or in anywise about the business of the Nehi Bottling Company when he entered the laundry, and the presumption which had followed him was no longer in existence when he stopped his truck and entered the premises of the laundry for reasons unknown. The facts in this case are nowise similar to those of the cases cited above where injury was sustained upon the premises of the employer. Neither do they come within that group of cases annotated in *Marian Nat. Bank v. Harden,* 83 W. Va. 119, 97 S. E. 600, 6 A. L. R., p. 246, and 50 A. L. R., p. 1148, "to the effect that injuries which are sustained by an empolyee, who, when confronted with a sudden emergency, steps beyond his regularly designated duties in an attempt to save himself from injury, or to rescue another employee from danger, or to save his employer's property, arise out of and in the course of the employment."

The actions of Mr. Mims were most laudable. There can be no doubt that he gave his life in saving others.

Two hundred and fifty-eight people were employed in the laundry at the time, all of whom most certainly would have lost their lives but for the efforts of Mr. Mims, as the terrific explosion shattered buildings for blocks and was felt as far as thirty-two miles away. Too much cannot be said in behalf of this brave man, but we are of the opinion that there is no error in the order of the Circuit Judge holding that the accident which resulted in the death of Mr. Mims did not arise out of and in the course of his employment by the Nehi Bottling Company, Inc., within the meaning of the Workmen's Compensation Law. Therefore, the exceptions should be overruled and the order appealed from affirmed, and It Is So Ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.

STUKES, Justice (concurring).

I concur in overruling this appeal because of the express finding of fact by the Commission (which is controlling upon the Court) that the deceased employee deviated from the course of his employment, quoting, "for some reason unknown". This is well stated in the order of the Circuit Court, as follows: "In any event, the findings of the Commission to the effect that Mr. Mims entered the premises 'for some reason unknown to anybody' and 'without any realization or knowledge of the impending explosion' and thereupon 'became aware' of the emergency, have the legal effect of excluding the possibility that he entered the premises of the laundry for the purpose of lending aid and assistance in an emergency, knowing that same existed, in accordance with the line of cases relied upon by claimant's attorneys. * * * It appears to this Court that the Commission has in this case destroyed the only theory upon which its award could have rested by its positive findings that Mr. Mims, for some reason unknown to any one, deviated from his line of duty."

Therefore I do not think it accurate to say, as the opinion of Mr. Justice Taylor opens and concludes, that it is held that the accident did not arise out of and in the course of employment. The decision, which I join in affirming, is to the effect that the Commission failed to factually find that it did, which is fatal to the claim.

It should be added that the order under review does include at the end the statement that the accident and death did not arise out of and in the course of employment, which I think immaterial error in view of the other contents of the order, some quoted above.