17680

Werner HALPERN, Deceased, Employee, Mrs. Anita Halpern *et al.,* Respondents-Appellants, v. DE JAY STORES, INC., Employer, and Lumbermen's Mutual Casualty Company, Carrier, Appellants-Respondents

(115 S. E. (2d) 297)

*Messrs. William Elliott* and *Norbert A. Theodore,* of Columbia, *for Appellants,*

*Messrs. Edens & Hammer* and *Terrell L. Glenn,* of Columbia, *for Respondent,*

*Messrs. William Elliott* and *Norbert A. Theodore,* of Columbia, *for Appellants, in Reply,*

July 11, 1960.

STUKES, Chief Justice.

This is an appeal from an award of workmen's compensation to the widow, for herself and other dependents, of the deceased former manager of the Kay Bee Store in Columbia which is a unit in a chain of credit clothing stores owned and operated by appellant DeJay Stores, Inc., whose office is in New York City and which was the employer. The main question on appeal is whether the accidental death of the employee arose out of and in the course of his employment.

The Industrial Commission so found and the Circuit Court affirmed, whence this appeal by the employer and its carrier.

There is no substantial dispute in the testimony. There was a credit manager of the store whose duty it was to collect delinquent accounts. When he failed he turned the accounts over to the deceased manager who tried to make collections by personal visits to the debtors. This was in the scope of the duties of his employment. The employer preferred that the manager make such trips after store hours but was cognizant of, and countenanced, the practice of the manager in visiting delinquent debtors during usual store hours.

On this occasion the credit manager had turned over several delinquent accounts to the manager who agreed to try to make the collections. The credit manager testified that the deceased, after verifying that the credit manager would be in the store on that day, on the morning of the day of the accident took information cards of several delinquents and said to the witness, "Well, I think—I think maybe I'll get out a little bit and loosen up my muscles, relax a little bit  *  *  *  and (the deceased said) in the meantime while I'm out I can attend to a few things * * * might even take to a run up to Chester." See *Ervin v. Myrtle Grove Plantation,* 206 S. C. 41, 32 S. E. (2d) 877. The witness knew that the deceased had an acquaintance in Chester. After inquiring as to the route (he was a comparative newcomer to Columbia) the deceased set out in his automobile on the highway which was the route to Chester but was also the route to the home of one of his delinquents. At a point 8.3 miles from the city limits of Columbia and 11.7 miles from the State Capitol the deceased was in collision with a truck and received injuries from which he died in an hour or so. In his pocket was a card of the account of a delinquent debtor named Davis, which contained the information that the latter lived about 12 miles out, off the old Winnsboro road, which was also the route to Chester. The corresponding record of this account which was in the

store, and to which the deceased had access, gave the directions to the debtor's home as, "Turn L (left) at about fifteen miles out. 1st H (house) past Old Camp Ground Church—on Old Winn (Winnsboro) Rd." (Meanings of abbreviations supplied in parentheses.)

By a highway map and patrolman the appellants proved that from the State Capitol building the distance to the Old Camp Ground Road, into which the deceased should have made a left turn to reach the debtor's home, is 10.5 miles. The store is about six blocks North of the Capitol or about a half mile nearer the Camp Ground Road than is the Capitol.

It is seen that if the distance be measured from the city limits, the store or the Capitol building, the deceased had not traveled the twelve miles indicated by the card in his pocket or the fifteen miles indicated by the card in the store, although he had passed the Camp Ground Road.

The credit manager was indefinite in his testimony as to the distance to the debtor's home. We quote the following excerpts from it:

"Q. Do you know where that account (debtor) lives? * * * A. Approximately—I would say approximately twelve miles—it may be fifteen, I have been there and I didn't check the speedometer or anything, on the Old Winnsboro Road as you come to a store and service station on the left." * * *

* * *

"Q. * * * In order to get to Ezell Davis' (debtors') house would it be a direct route * * * to go along the Old Winnsboro Road about ten miles out of Columbia? A. Yes, sir."

* * *

"Q. Well, you'd have to go at least ten miles out on the Winnsboro Road in order to reach Ezell Davis' house? More than ten miles? A. Yes, sir."

* * *

"Q. And you don't know how far it is, you never checked your speedometer when you went there, did you? A. No, sir."

The witness testified that he gave decedent directions to the debtor's home and, quoting, "told him how to get there and made a notation on the card how to get there."

There was no name sign on the Camp Ground Road, where the deceased should have turned left on his way to the debtor's home, but only a small sign showing the number of this secondary road. There are many such roads intersecting the Old Winnsboro Road to decedent's left as he traveled it.

In the face of these facts, it cannot be said that the conclusion of the Commission that, in effect, the deceased was on his way to see the debtor, and not en route to Chester on a personal mission as contended by the appellants, was without evidence to sustain the finding. Possibly the deceased was on his way to Chester but he had not reached that point of departure from his duties when he met his death, according to the information which he had in the store and in his pocket. The latter is rather strong evidence that he intended to attempt the collection of the delinquent account although he never reached the home of the debtor and had, in fact, passed the turn by about 1.2 miles; but he was within the limits of his directions, from which it may reasonably be inferred that he was in the course of his employment although, in fact, in ignorance of the route, he was unwittingly lost.

The evidence did not conclusively show that he had deviated from his employment as it did in *Falconer v. Beard-Laney, Inc.*, 215 S. C. 321, 54 S. E. (2d) 904; *Mims v. Nehi Bottling Co.*, 218 S. C. 513, 63 S. E. (2d) 305, and *White v. South Carolina State Highway Dept.*, 226 S. C. 380, 85 S. E. (2d) 290, upon which appellants rely. It was a factual issue and it is elementary that a factual finding of the Commission will not be reversed by the Court if there is evidence to sustain it. Here there is.

Nor is *Sylvan v. Sylvan Bros.,* 225 S. C. 429, 82 S. E. (2d) 794, also cited by appellants, in point; there the employee was injured on a city street while en route to work. Other authorities cited by appellants have been examined and are found to be of no aid to them. The case in hand is within the principle announced and applied in *Owens v. Ocean Forest Club,* 196 S. C. 97, 12 S. E. (2d) 839, that there is a natural presumption, or a presumption of fact, that one charged with the performance of a duty and injured while performing such duty, or found injured at a place where his duty may have required him to be, is injured in the course of, and as a consequence of, the employment. That decision was cited and followed in *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879.

Several questions were stated in the brief but all of them are answered adversely to appellants by what has been said. There is no merit in the main appeal and the exceptions relating to it are overruled. We turn to the minor feature of the appeal.

On motion of the appellants the deposition of an officer of DeJay Stores was taken in New York. The Hearing Commissioner assessed, and the Commission affirmed, award in the amount of $200.00 against appellants for the expenses of respondent's counsel, travel and subsistence, in attending the taking of the deposition. Appeal from that item of the award was sustained and the court reversed the award of $200.00 for costs and expenses. The claimant appealed to this court from that feature of the judgment of the lower court. We agree that the award of $200.00 must be reversed. The costs and expenses of actions and proceedings are purely statutory and there being no statute authorizing the award here in question, it cannot stand. 7 S. C. Dig. Costs, 3, p. 11.

The result is the affrmance of the judgment under appeal.

Affirmed.

Taylor, Oxner, Legge and Moss, JJ., concur.