## 18708

Bertie M. THOMAS, Shirley L. Thomas, Donnie Wayne Thomas, and Daniel Thomas, Appellants, v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Respondent.

(157 S. E. (2d) 169)

*Messrs. Henry Hammer* and *Isadore S. Bernstein,* of Columbia, *and Dennis, Dennis & Bishop,* of Moncks Corner, *for Appellants,*

*Messrs. Daniel R. McLeod, Attorney General, and Julian L. Johnson and Carl R. Reasonover, Assistant Attorneys General,* of Columbia, *for Respondent,*

September 29, 1967.

BUSSEY, Justice:

In this Workmen's Compensation case, claimants-appellants, as the beneficiaries of one A. Lester Thomas, deceased, an employee of the South Carolina Highway Department, were awarded benefits by the Industrial Commission, and the appeal is from an order of the circuit court reversing such award for lack of any competent evidence to support the same.

The deceased, Thomas, was one of eight mechanics employed by the Department at Moncks Corner, South Carolina, charged with the duty of maintaining approximately 162 school buses which served Berkeley County. Thomas lived near Huger, South Carolina, which is located between Moncks Corner and Cainhoy, the latter being a village in Berkeley County, some thirty-five miles southeast of Moncks Corner. He suffered a fatal accident about 5:30 in the afternoon, resulting from a blowout, while traveling alone in his personal car from Moncks Corner in the direction of both his home and Cainhoy. He was conscious following the accident and lived until the next day. Briefly stated, the contention of the claimants is that Thomas, at the time, was en route to Cainhoy for the purpose of repairing a school bus which was disabled at that point. The contention of the Department is that Thomas was off duty and en route only to his home, having declined to go to Cainhoy; and that mechanics by the names of Fashion and Mitchum were en route to Cainhoy for the purpose of repairing the particular bus.

The Commission found as a fact that Thomas was en route to Cainhoy for the purpose of repairing the bus, and the only issue before us is whether there is any competent evidence supporting such finding of fact. It is sufficient to affirm the award of the Commission "if the circumstances surrounding the occurrence are such as to

lead an unprejudiced mind reasonably to infer that" the accident occurred while Thomas was en route for the purpose of repairing a bus. *Jake v. Jones,* 240 S. C. 574, 126 S. E. (2d) 721. In determining whether the finding of the Commission is supported by competent evidence, the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to such finding. We think it would help to bring the issue into better perspective if we first review the evidence tending to prove the contention of the claimants, and leave for later discussion the evidence relied upon by the Department.

Thomas had been employed by the Department as a mechanic for eleven years; was a faithful employee; was subject to call twenty-four hours a day, and, in fact, put in a great deal of overtime for which he was not paid. Of all the mechanics working for the Department, mentioned in the record, he was the only one who lived directly on the route to Cainhoy and the one who lived nearest thereto. The disabled school bus at Cainhoy was actually a four year old station wagon, the operator thereof being a Mrs. Avinger. It is inferable that this wagon was one which should have long since been replaced as it was continually in mechanical difficulty, and as many as three calls per week came in from her, she sometimes calling twice in one day. Thomas was the mechanic who regularly and usually serviced this particular wagon. He sometimes drove his personal car to Cainhoy for that purpose, and on other occasions a Department truck would follow him to his home where Thomas would leave his car and then go on in the truck to Cainhoy. It was not at all unusual for a mechanic, going past his home in the direction of a disabled vehicle, to take his car on home and be picked up by a maintenance truck driven by a second mechanic or helper. The customary and habitual service of Mrs. Avinger's wagon by Thomas was so well established and known that personnel in the office of the Berkeley County Board of Education were concerned as to who was going to take care of Mrs. Avinger's problems following the death of Thomas.

Sometime between 4 and 4:30 P.M. on the afternoon of the fatality, Thomas was notified that Mrs. Avinger's bus was again in need of service. At sometime around 5 o'clock he left the maintenance shop and proceeded in the direction of Cainhoy where the disabled bus was located.

As Thomas was leaving the shop, he had a very brief conversation with a fellow employee, Myers, who testified as follows:

"A. The only statement was made between me and Mr. Thomas was as he left the gate.

"Q. As he left the gate?

"A. He was on the outside now, outside the gate, and I said to him as a joke that we have all the time, 'You have cheated the State out of another day.' He laughed and went on. He said, 'Well, not quite.' He said, 'I have a few more things to do.' Said, 'I'm going home to the old chicken.' I said, 'Well, me too.' "

The main road from Moncks Corner to Cainhoy is Route No. 402. In traveling between these points, however, one may proceed in part over secondary roads Nos. 171 and 125, and the distance between the points is approximately the same whether travel is altogether on the main road or partly on secondary roads. Thomas' home was on Route 402 at a point just east of where it is intersected by secondary road 125. Mr. J. D. Hooper, Berkeley County Maintaince Engineer for the Department, testified that Thomas usually drove on the secondary roads, instead of the main route. The fatal accident occurred on secondary road No. 125, at a point within five hundred to a thousand feet of Thomas' home. Fashion, a negro mechanic, and Fashion alone was following Thomas on this secondary road in a pick up truck belonging to the Department at the time of the fatal accident. This pick up truck was one used principally by Thomas and ordinarily known and referred to as "the Thomas truck."

Thomas' widow arrived at the scene of the accident within minutes thereafter and testified to the following conversation with Thomas:

"And in just a couple of more moments he tried to look up at me like that (indicating) and he said, 'Baby, has Fashion gone on to Cainhoy?' and I looked and I said, 'He must be, daddy, because the truck is gone.' He said, 'Well, that's all right. Fashion will know what to do.' He said, 'We had two buses at Cainhoy to get.' "

The last testimony was corroborated in essence by Shirley L. Thompson, daughter of the deceased, and Chester Morris.

The circumstances hereinabove related, together with the statements by Thomas upon leaving the shop and immediately following his fatal injury, certainly tend to prove that he was still in the course of his employment at the time of the accident. In the light of the many buses and many service calls, received from day to day, it is not at all unreasonable to infer that Thomas knew of some other bus in the area which was in need of some attention, and hence his reference to two buses. It might not be amiss to point out that under the circumstances there is a presumption that his death arose out of and in the course of his employment as it occurred at a time and place, when and where, he would have been required to be in the usual pursuit of his duty. *Owens v. Ocean Forest Club,* 196 S. C. 97, 12 S. E. (2d) 839; *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879.

We think that the foregoing circumstances are quite sufficient to lead an unprejudiced mind to logically and reasonably conclude that Thomas was still engaged in the performance of his duties as an employee at the time of fatal injury. The contention of the Department to the contrary is based upon the testimony of the only two witnesses testifying for it, Spires, head mechanic of its maintenance shop, and Cadell, his assistant. According to them, Spires was absent when the phone call was received about the Avinger bus; such call being taken by Cadell and promptly communicated by him to Thomas and later to Spires upon his return.

While Cadell testified that Thomas refused to go to Cainhoy he did not undertake to state Thomas' exact words, and when Cadell's testimony is considered as a whole, it is not at all clear that the alleged response of Thomas was, in fact, a flat refusal as opposed to an expression of displeasure at having to repair Mrs. Avinger's bus again after normal duty hours. Spires, who had no conversation with Thomas and knew nothing about the conversation between Cadell and Thomas, testified that he instructed Mitchum and Fashion, rather than Thomas, to undertake the repair at Cainhoy. There is no direct evidence that Mitchum, rather than Thomas, actually went on the call, and an analysis of the testimony of Spires shows that it contained at least equivocations, if not outright contradictions.

In brief, while the evidence relied on by the Department would reasonably support its contention, it is elementary that it is not the province of the court to weigh the evidence, both the weight and credibility thereof being for the Commission, and the issue being simply whether there is any competent evidence to support the award.

If, perchance, Thomas, instead of getting killed, had injured someone else and suit had been brought against his employer under the doctrine of respondeat superior, we think there would be no hesitancy whatever in holding that the facts and circumstances would be quite sufficient to support a jury verdict against the employer. Illustrative of this proposition in the case of *Stevens v. Moore*, 211 S. C. 498, 46 S. E. (2d) 73, wherein a jury verdict against the master was upheld on declarations of the servant as to what he was doing and where he was going at the time of the accident.

While the facts of no two cases are precisely alike, the cases of *Malphrus v. State Commission of Forestry*, 221 S. C. 75, 69 S. E. (2d) 70; and *Halpern v. De Jay Stores, Inc.*, 236 S. C. 587, 115 S. E. (2d) 297, are, we think, substantially in point and support

228

the conclusion that the award of the Commission here is amply supported by competent evidence. In each of those cases there was evidence that the employee was engaged in a personal mission at the time of the fatality. In each instance awards were upheld based on statements of the deceased employee and other circumstances indicating that the deceased employee was, in fact, in the course of his employment at the time. The evidence here supporting the award is quite as sufficient, we think, as the evidence in either of the cited cases.

Having concluded that the questioned finding of fact, upon which the award of the Commission was based, was adequately supported by competent evidence, it follows that the judgment of the circuit court should be, and the same is hereby,

Reversed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.