520 S.E.2d 634

Vickie **BROUGHTON**, Employee, Respondent,

v.

**SOUTH OF THE BORDER**, Employer, and Schafer Company, Inc., Insurance Department, Insurer, Appellants.

No. 3024.

Court of Appeals of South Carolina.

Heard June 10, 1999.

Decided July 6, 1999.

Rehearing Denied Aug. 28, 1999.

---

489

490

492

F. Earl Ellis, Jr., and Daniel W. Hayes, both of Ellis, Lawhorne & Sims; and James B. Richardson, Jr., of Svalina, Richardson & Larson, all of Columbia, for Appellants.

Frederick M. Zeigler, of Columbia; and James H. Renfrow, of Dillon, for Respondent.

ANDERSON, Judge:

In this Workers' Compensation action, South of the Border appeals from the Circuit Court's affirmance of the Full Commission's order awarding benefits to Vickie Broughton. South of the Border contends Broughton failed to establish her injuries arose out of and in the course of her employment. We reverse.

### FACTS/PROCEDURAL BACKGROUND

Broughton worked for South of the Border as a Kardex clerk for twenty-four years. Broughton's duties included monitoring daily inventory, purchasing additional merchandise from suppliers, reviewing samples, keying sales tickets into the computer daily, and conducting a physical inventory annually. Broughton's normal duties did not generally require leaving her office and never required leaving South of the Border's premises.

When Broughton's supervisors, Patty Schafer and Ann Tyndall, were absent, Broughton and a co-employee assumed responsibility for the office and handled work questions from other employees. However, Broughton lacked any supervisory authority and did not exercise a supervisory role over any other employees.

At the hearing before the Single Commissioner, the parties stipulated to the following facts:

On February 3, 1996 the claimant came into work and read a note from a co-worker who's name is Rhonda Mims. This note from Ms. Mims indicated that she was sick and unable to come to work and wanted someone to check on her. The claimant decided to leave her work place and go check on Ms. Mims, the co-worker. The claimant's supervisor was not yet at the work place. *The claimant has no supervisory duties over this co-worker or any other.* When the claimant went to visit the co-worker, she slipped and fell at the co-worker's house and broke her leg. (Emphasis added).

It is clear from the testimony that the claimant did not clock out of work to leave the work place to go visit the co-worker. It is also clear that the policy of the employer is that when any employee leaves work for any reason they

are to clock out. The claimant's normal duties do not take her away from the work place. The claimant's supervisor testified that had she been there, she would not have approved the claimant leaving work to go check on Rhonda Mims.

On the day of her accident, Broughton began working at approximately 8:10 a.m. and assumed responsibility for the office because both Schafer and Tyndall were absent. Upon her arrival at work, Broughton read a note written and delivered to South of the Border by Mims. The letter stated: "I've been up all night sick, I have a temperature of over 101 and I feel delirious, would someone please check on me?" Mims left the note on a table in the Kardex room. It was not addressed specifically to Broughton.

Broughton left work to check on Mims because Mims did not have a telephone and Broughton felt responsible for responding to the note. Although Broughton testified all employees and supervisors must clock out when leaving for personal matters, Broughton left to check on Mims without clocking out. Mims lives about one mile from South of the Border.

After checking on Mims, Broughton injured her left leg when she slipped walking down Mims's stairs. South of the Border agreed Broughton sustained injuries as a result of the fall and conceded all medical treatment rendered thus far was necessary.

According to Broughton, she and Mims had no social interaction outside of their employment relationship. However, Broughton conceded going to Mims's house with other co-workers for dinner on at least one occasion. Broughton stated that even if she had not been working she would still have checked on Mims.

Claudette Hunt, Broughton's co-worker, said company policy prohibited leaving for personal reasons without clocking out. She declared working as a Kardex clerk never required leaving the office. Ann Tyndall testified company policy required all employees, even supervisors, to clock out anytime they left the premises but acknowledged failing to clock out when she left to assist Broughton after she fell from Mims's stairs. Tyndall would have required Broughton to clock out

before leaving to check on Mims because she believed the visit constituted a personal matter. Tyndall would not have left to check on Mims because she felt Mims could drive herself to the hospital if she could drive herself to work and leave a note.

Broughton filed a Form 50 seeking compensation for medical treatment and disability benefits. In its Form 51, South of the Border admitted Broughton sustained an injury but denied benefits asserting Broughton "was on a personal errand" at the time of the injury and, thus, the injury did not arise out of and in the course of her employment.

The Single Commissioner found Broughton failed to establish her injury arose out of and in the course of her employment. The Commissioner ruled Broughton had neither the express nor implied permission of South of the Border to leave the work place and go check on the health of a co-worker as this was not part of her employment. The Full Commission reversed. The Circuit Court affirmed.

## ISSUE

Did the Circuit Court err in affirming the Full Commission's finding Broughton's injury arose out of and in the course of her employment with South of the Border?

## STANDARD OF REVIEW

In reviewing a Workers' Compensation decision, an appellate court may not substitute its judgment for that of an agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. *Tiller v. National Health Care Ctr.*, 334 S.C. 333, 513 S.E.2d 843 (1999); *Clade v. Champion Laboratories*, 330 S.C. 8, 496 S.E.2d 856 (1998). Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Miller v. State Roofing Co.*, 312 S.C. 452, 441 S.E.2d 323 (1994); *Stokes v. First Nat'l Bank*, 306 S.C. 46, 410 S.E.2d 248 (1991).

The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Hicks v. Piedmont Cold Storage,* 335 S.C. 46, 515 S.E.2d 532 (1999); *Medlin v. Upstate Plaster Serv.,* 329 S.C. 92, 495 S.E.2d 447 (1998). It is not within our province to reverse findings of the Commission which are supported by substantial evidence. *Hunter v. Patrick Constr. Co.,* 289 S.C. 46, 344 S.E.2d 613 (1986). *See Tiller, supra* (appellate court must affirm findings of fact made by Commission if they are supported by substantial evidence). A court may reverse or modify the Commission's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are affected by other error of law. *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996).

## *LAW/ANALYSIS*

South of the Border contends the Circuit Court erred in affirming the Full Commission's finding Broughton's injuries arose out of and in the course of her employment. We agree.

### "Injury By Accident Arising Out of and in the Course of the Employment"

"The South Carolina Workers' Compensation Act requires that, to be compensable, an injury by accident must be one 'arising out of and in the course of employment.'" *Osteen v. Greenville County Sch. Dist.,* 333 S.C. 43, 49, 508 S.E.2d 21, 24 (1998). *See also* S.C.Code Ann. § 42–1–160 (Supp.1998). The question of whether an accident arises out of and is in the course and scope of employment is largely a question of fact for the Full Commission. The claimant has the burden of proving facts that will bring the injury within the Workers' Compensation law. *Clade v. Champion Laboratories,* 330 S.C. 8, 496 S.E.2d 856 (1998).

The two parts of the phrase "arising out of and in the course of employment" are not synonymous. *Osteen, supra.* Both parts must exist simultaneously before any court will allow recovery. *Id.*

## I. "Arising Out Of"

The phrase "arising out of" in the Workers' Compensation Act refers to the injury's origin and cause. *Osteen, supra; Baggott v. Southern Music, Inc.,* 330 S.C. 1, 496 S.E.2d 852 (1998). For an injury to "arise out of" employment, the injury must be proximately caused by the employment. *Osteen, supra. See also Fowler v. Abbott Motor Co.,* 236 S.C. 226, 113 S.E.2d 737 (1960) (accident "arises out of" employment when it arises because of it, as when the employment is a contributing proximate cause). The injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Osteen, supra.* In *Douglas v. Spartan Mills, Startex Div.,* 245 S.C. 265, 140 S.E.2d 173 (1965), our Supreme Court discussed the "arising out of" requirement:

> " 'It (the injury) arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions·under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' "

*Douglas,* 245 S.C. at 269, 140 S.E.2d at 175.

Here, there is simply no causal connection between Broughton's employment and her injury. Her employment as a Kardex clerk in no way required her to check on sick employ-

ees. The accident was not related to the performance of any duties as an employee by Broughton. Checking on sick co-workers is not a job requirement of Kardex clerks. *See Osteen, supra* (finding no causal connection between claimant's employment and her back injury existed because her employment did not require her to place an ice chest, for use over the weekend, into the trunk of her vehicle).

 The record lacks *any* evidence supporting Broughton's contention her injury arose out of her employment. Where the facts are undisputed, the question of whether an accident is compensable is a question of law. *Jordan v. Dixie Chevrolet, Inc.,* 218 S.C. 73, 61 S.E.2d 654 (1950). *See also Polk v. E.I. duPont de Nemours Co.,* 250 S.C. 468, 158 S.E.2d 765 (1968) (lack of conflict in evidence renders question of causal connection, which is ordinarily one of fact for Commission, question of law for decision by court).

## II. "In the Course of the Employment"

 The phrase "in the course of the employment" refers to the time, place, and circumstances under which the accident occurred. *Owings v. Anderson County Sheriff's Dep't,* 315 S.C. 297, 433 S.E.2d 869 (1993); *Loges v. Mack Trucks, Inc.,* 308 S.C. 134, 417 S.E.2d 538 (1992). An injury occurs "in the course of" employment within the meaning of the Workers' Compensation Act when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while fulfilling those duties or engaged in something incidental thereto. *Baggott v. Southern Music, Inc.,* 330 S.C. 1, 496 S.E.2d 852 (1998); *Fowler v. Abbott Motor Co.,* 236 S.C. 226, 113 S.E.2d 737 (1960).

"The modern rule brings within the course of employment any activity undertaken in good faith by one employee to assist a co-employee in the latter's *performance of his work.*" 2 Arthur Larson & Lex K. Larson, *Workers' Compensation Law* § 27.11 (1997) (emphasis added). This is because the employer benefits directly by allowing employees to assist each other with work and indirectly by fostering good employer/employee relations. However, "[i]f the aid takes the form of merely helping the co-employee with some matter entirely personal to the co-employee, it is outside the course of employ-

ment, unless the deviation involved is insubstantial." *Id.* § 27.15 (footnotes omitted).

### A. Absence of Benefit to Employer

First, Broughton failed to argue she intended to assist Mims in the "performance of [her] work" by leaving South of the Border's premises and driving to Mims's personal residence to check on her health. Additionally, the record does not support this contention.

In *Hicks v. Piedmont Cold Storage,* 335 S.C. 46, 515 S.E.2d 532 (1999), our Supreme Court discussed the "benefit to employer" issue. The children of the deceased, Joseph Hicks, Sr., brought a Workers' Compensation action against his employer, Piedmont Cold Storage, seeking death benefits. Hicks was killed while repairing the personal vehicle of the plant manager on a Saturday at Piedmont Cold Storage. The Single Commissioner denied the claim finding Hicks did not: (1) work regularly on Saturdays; (2) clock in on the date of the accident; or (3) benefit Piedmont in any way on the day of the accident. The Commissioner concluded Hicks worked for the personal benefit of the plant manager and therefore his death did not result from an injury by accident arising out of and in the course of his employment with Piedmont. The Full Commission affirmed.

The Circuit Court reversed holding the tasks performed by Hicks at the time of his death were incidental to his employment. The judge found the accident occurred: (1) on Piedmont's premises; (2) with Piedmont tools; and (3) while Hicks performed a task under the direction and supervision of his superior. The judge ruled the Commission's decision was against the substantial weight of the evidence and ordered Piedmont to pay death and funeral benefits to the minor children. The Court of Appeals affirmed. The Supreme Court reversed and explained:

> The key factor in determining the children's entitlement to compensation here is whether the work benefitted the employer. *Fountain v. Hartsville Oil Mill,* 207 S.C. 119, 32 S.E.2d 11 (1945) (workers' compensation benefits denied because the employee's activity provided no benefit to the employer). The employee in *Fountain* was injured during regular working hours while working at his supervisor's private residence and we held there was no coverage.

Here, the decedent was being paid by his supervisor for work done on the supervisor's personal vehicle on a non-work day at the employer's business. The record shows that Hicks did not regularly work on Saturdays and did not clock in on the day of the accident.

There is substantial evidence in the record supporting the commission's finding that the work performed by Hicks did not benefit Piedmont and was for the personal benefit of the plant manager. The findings of fact must be affirmed if they are supported by the evidence. Based on the reasoning in *Fountain*, the accident here was outside the course of decedent's employment. Further, the circuit court and Court of Appeals substituted their judgment for that of the commission in finding that Hicks conferred some benefit on Piedmont. The supervisor did not lose any time from work as the repair was being done on a Saturday.

*Hicks*, 335 S.C. at 49, 515 S.E.2d at 533.

Broughton's act was for the personal benefit of Mims and was of no benefit to South of the Border.

## B. Substantial Nature of Deviation

 Even if the assistance an employee provides a co-employee is of an entirely personal nature, the activity may still fall within the course of employment if the deviation involved is insubstantial. *See* 2 Arthur Larson & Lex K. Larson, *Workers' Compensation Law* § 27.15 (1997). The Supreme Court has affirmed an award of compensation for injuries sustained by an employee while giving entirely personal assistance to a co-employee where the deviation from the course of employment was insubstantial. In *Cauley v. Ross Builders Supplies, Inc.*, 238 S.C. 38, 118 S.E.2d 879 (1961), Cauley, who was a Ross Builders employee and a trained carpenter, was injured while trimming a piece of board to make a wedge for a fellow employee. The Single Commissioner found the accident arose out of and in the course of Cauley's employment with Ross Builders. The Full Commission and Circuit Court affirmed. The Supreme Court ruled:

[Cauley] was often requested by his supervisor, Mr. Stone, to build counters for display of the company's equipment and merchandise....

On December 4, 1958, after finishing his lunch, [Cauley] went to the carpentry shop to make a leg for a display

counter. Having found a board suitable for that purpose, and having run it over the table saw and cut its width to eight inches, he decided that he would first make from it a wedge for a fellow employee.... While pushing the board through the joiner to taper it, [Cauley] was injured. The evidence shows without contradiction that to have cut and tapered the wedge would have taken about five minutes.

This is not a case of lending aid to a fellow employee in the performance of the latter's duty to the employer. The task that [Cauley] was performing was entirely personal to his fellow employee, and his injury was therefore not compensable unless the deviation from the course of his employment was so trivial that it could be fairly characterized as insubstantial. Larson's *Workmen's Compensation Law*, Section 27.15. The Commission found as a fact that the deviation was insubstantial. We think that the evidence before referred to adequately supports that finding.

*Cauley*, 238 S.C. at 39–40, 118 S.E.2d at 879–80.

In the present case, the Circuit Court, in its order affirming the Commission, cited *Cauley* in support of its finding that "[i]f an employee is considered to be in the course and scope of his employment while working on a piece of property owned by a co-employee certainly an employee would be found to be in the course and scope of his employment when he responds to a call involving the personal health of a co-employee." *Cauley* is inapposite here. The employee in *Cauley* was trained as a carpenter and the injury occurred during an activity which was incident to his normal employment. In fact, Cauley was in the process of fashioning a block of wood pursuant to his job assignment when he took a moment to make from it a wedge for his co-employee.

Broughton's visit to Mims's home cannot be deemed incidental to her normal employment because Broughton's duties as a Kardex clerk did not include checking on sick employees at their homes. Her duties never required leaving South of the Border's premises. The deviation by Broughton from the course of her employment with South of the Border was substantial.

### C. Rescue or Sudden Emergency

An injury sustained during a rescue or sudden emergency has been recognized as bringing an accident within the

course of employment. *See, e.g., Howell v. Kash & Karry,* 264 S.C. 298, 214 S.E.2d 821 (1975). In *Howell,* the Court found claimant, a grocery store stock boy, within the course of his employment when he injured himself while chasing two thieves who snatched a customer's purse. The *Howell* Court explicated:

> Larson's Workmen's Compensation, section 27.00 states the generally recognized rule as follows:
>
>> "An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interest, whether or not the employee's own assigned work is thereby furthered, is within the course of employment."
>
> Here the employee-claimant was in the course of his regular duties when, in his immediate presence a customer who had already parked her vehicle in the store parking lot and was within a few feet of the entrance to the store was hit, pushed and robbed by two purse snatchers. It clearly would have been to the financial interest of the employer, in this case, if the claimant had successfully recovered the purse of the customer. The money that she intended to spend in the employer's store was in the purse that he was attempting to recover. As pointed out by Professor Larson in section 27.22(a), awards have been upheld for injuries occurring in the course of miscellaneous Good Samaritan activities by employees, on the theory that the employer ultimately profited as a result of the good will thus created, and, as he points out, "When the person assisted stands in some business relation to the employer, the employer benefit is relatively obvious."
>
> The time, place and scope of the claimant's actual duties brought him immediately in contact with a customer of his employer who was in sore distress. To assist a customer in any kind of distress is a natural incident of any employee's employment. Would not any reasonable employer expect the nearest employee to go to the rescue of a customer even though rendering assistance was not a part of the regular assigned duty of the employee? Would not every employer want his customers to feel that the employer and his employees would make every reasonable effort to protect them and their purses from juvenile purse snatchers operat-

ing in the immediate vicinity of the employer's premises? The only common sense answer to these questions is yes. In view of the current prevalence of purse snatching by juvenile delinquents, there is obvious and substantial benefit flowing to a merchant from knowledge on the part of his customers that the merchant and his employees will make every reasonable effort to protect the customers and their purses from such juvenile delinquents. We have no real difficulty in concluding that the claimant's injury in the instant case arose out of, and in the course of his employment. . . .

*Howell,* 264 S.C. at 301–02, 214 S.E.2d at 822.

Broughton contends *Howell* is closely analogous to the case at bar and, thus, controlling. We disagree.

The case *sub judice* is easily distinguishable from *Howell.* First, the time, place and scope of Broughton's duties did not bring her into immediate contact with sick employees staying at home. Broughton failed to present any definitive evidence indicating visiting sick co-employees constituted a regular employment duty for South of the Border employees, although she did testify employees often assisted each other when someone needed help.

Second, it is unreasonable for an employer to expect a co-employee to check on other employees every time they miss work because of illness. Furthermore, there is no evidence indicating Broughton received express or implied permission to leave South of the Border's premises while she was on the clock to check on a sick co-employee. In fact, Broughton testified her duties never required her to leave South of the Border's premises. Broughton's supervisor said she would not have permitted Broughton to visit Mims while on the clock.

Third, the emergency situation in *Howell,* theft of a customer's purse, is not commensurate with the alleged emergency in the present case, an employee sick at home. The lack of emergency is evidenced by the fact that Mims apparently drove herself to work and delivered the note. Therefore, she could have driven herself to the hospital. Apodictically, this is *not a rescue case.*

Fourth, *Howell* focused on the substantial benefit flowing to the employer when customers feel the employer and its em-

ployees will make every reasonable effort to protect the customers from theft. No similar benefit exists here. Any good will Mims may feel toward South of the Border for sending someone to check on her health is too minimal and tenuous a benefit to bring Broughton's actions within the course of employment. There was no rescue or sudden emergency to justify bringing Broughton's actions within the course of her employment.

## D. Express or Implied Permission

■ South of the Border maintains the Full Commission erred in finding Broughton had express, as well as implied, permission to leave the work place to check on the health of a sick co-worker. We agree.

South of the Border has a work policy applicable to all employees that they are not to conduct personal errands during work hours. Employees are to clock out if they leave on personal business. Broughton was aware of this policy.

On the morning of her accident, Broughton's immediate supervisors were not in the office to give express permission for her to leave. While Broughton may have been the senior person in the office when her supervisors were absent, this seniority relates only to office responsibilities involving Kardex work and procedures. Broughton has no supervisory responsibilities that would allow permission to leave the work premises to check on the health of a co-worker during work hours in contravention of a work policy against conducting personal errands on company time. Additionally, there was no acquiescence in a course of prior conduct establishing implied permission for this personal errand on company time. Broughton did not have express or implied permission from South of the Border to leave work to check on the health of a sick co-worker.

## E. Question of Law

We have reviewed the evidentiary record under the substantial evidence rule and conclude *no* evidence supports the decision of the Commission that Broughton's injury occurred "in the course of" her employment. *See Sharpe v. Case Produce Co.*, 329 S.C. 534, 495 S.E.2d 790 (Ct.App.1997), *cert. granted*, December 17, 1998. Because *no* evidence supports

the Commission's conclusion, the rule articulated in *Mullinax v. Winn–Dixie Stores, Inc.,* 318 S.C. 431, 437, 458 S.E.2d 76, 80 (Ct.App.1995), governs: "Where the evidence is susceptible of but one reasonable inference, the question is one of law for the court rather than one of fact for the Commission."

## *CONCLUSION*

We hold the Full Commission erred in finding Broughton's injuries arose out of and in the course of her employment because there is *no* evidence in the record to support this conclusion. *See Douglas v. Spartan Mills, Startex Div.,* 245 S.C. 265, 270–71, 140 S.E.2d 173, 176 (1965) (" 'If it is the intent of the legislature to include within the terms of the Workmen's Compensation Act employees injured while engaged in activities not in the course of their employment, though arising indirectly by reason of their employment, then the Act will have to be accordingly amended.' "); *Mims v. Nehi Bottling Co.,* 218 S.C. 513, 63 S.E.2d 305 (1951) (finding that, despite the laudable acts of the claimant, the injuries still failed to arise out of and in the course of employment within the meaning of Workers' Compensation law). Accordingly, the Circuit Court's order affirming the decision of the Full Commission is

**REVERSED.**

CURETON and STILWELL, JJ., concur.