## 20720

Pherebie Oliver SKIPPER, Respondent, v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellant.

(246 S. E. (2d) 94)

*Gordon B. Baker, Jr.,* Florence and *Judy Nell Chambers,* Columbia, *for appellant.*

*D. Kenneth Baker,* Darlington, *for respondent.*

July 10, 1978.

RHODES, Justice:

This is an appeal pursuant to the Workmen's Compensation Act, Section 42-1-10, *et seq.,* of the 1976 Code. The Single Commissioner, Full Commission, and Circuit Court resolved all issues against the employer-appellant. It is axiomatic that the Commission is the fact finder in Workmen's Compensation cases. Neither the Circuit Court nor this Court may substitute its opinion of the facts when the Commission's findings are supported by competent evidence. *Robinson v. City of Cayce,* 265 S. C. 441, 219 S. E. (2d) 835 (1975). Our basic inquiry in this case is whether the Commission's findings are supported by competent evidence. We affirm.

Although the testimony in this case is conflicting in almost all material areas, the following narrative of events culminating in the claimed injury on May 24, 1974, is in substance, that found by the Commission and is supported

by competent evidence. The claimant Pherebie Oliver Skipper, married, and in her early thirties, was employed in 1971 by Southern Bell as a long distance telephone operator at Florence. She was subjected to severe emotional tension on the job caused principally by unwarranted harassment from one Gloria Thompson, her fellow employee, who held the title of Service Assistant, a position superior to that held by claimant. By reason of the pressures of her work and the acts of harassment claimant became emotionally upset to a severe degree and reported such condition to the proper supervisory personnel, but no remedial action was taken.

On May 24, 1974, at about 3:00 p. m., Thompson stated to her supervisor that she was going to talk to the claimant and "have it out" with her. During the course of the afternoon, Thompson told the claimant several times that she wanted to talk with her. The claimant was entitled to a supper break from 5:30 to 6:30 p. m. Additionally, she had requested to be relieved of her duties from 5:30 p. m. to the normal termination of her duties at 11:00 p. m. The claimant had not been notified by her superior at the start of the supper break whether her request for leave had been granted so she waited in the kitchen [1] drinking coffee.

At approximately 6:00 p. m., the claimant was informed that her leave request for the remainder of the day had been granted. As the claimant was preparing to leave the building, she was accosted by Thompson who demanded to talk with her. The claimant asked that they talk in the kitchen, but Thompson replied that she wanted to talk "out here". The telephone operators worked on the second floor of the building. At this time Thompson was standing in a small entrance hall from which opened the door leading to the stairs descending to the street level. When the parties had passed through the exit door and onto the stair landing, Thompson began to tell the claimant that she would never get anywhere with a job at Southern Bell, that she would

---

[1] A room provided by the employer for the use of employees located adjacent to the large room in which the operators worked.

never get the job with Southern Bell for which she had applied, and that she knew who would get the job. Thompson then slapped the claimant who fell down some steps. The claimant then called her supervisor from the security phone at the bottom of the stairs, informed her of what had happened, and that she had been hurt.

The claimant attempted to work after the above described incident but was unable to satisfactorily perform her duties due to an uncontrollable shaking of her arm. The claimant went to Dr. Matthews on May 28, 1974, who hospitalized her for approximately seven days, treated her for lumbrosacral sprain, and referred her to Dr. Hodge, a neurosurgeon. During the latter part of June and the first part of July she was again hospitalized and referred by Dr. Matthews to Dr. Harley, a psychiatrist, who first saw the patient on July 9, 1974. She continued to be under the treatment of Dr. Harley at the time of the hearing. The claimant was still suffering from the shaking of her upper extremities at the time of the Hearing in September, 1975,[2] and had never returned to work. Dr. Harley diagnosed her condition as a severe psychoneurotic conversion reaction resulting from "the pressure and assault, physical and psychological that the patient had incurred".

The appellant has excepted to numerous factual findings by the Commission on the ground that they are unsupported by the record. In several instances, the appellant is correct in this assertion. Notable examples are the erroneous findings by the Commission that claimant commenced employment in 1970 and that the altercation between claimant and Thompson occurred shortly after 5:30 p. m. The testimony is undisputed that claimant began work in 1971 and that the altercation occurred shortly after 6:00 p. m. These patently erroneous factual findings made by the Commission are not

---

[2] The following observation was made by the Hearing Commissioner during the course of claimant's testimony: "Let the record show that during the hearing Mrs. Skipper's arms have been jerking and trembling similar to a person who has a case of Parkinson's disease".

deemed a material impediment to the proper consideration of the case by this Court in that they are contradicted by undisputed evidence, thus allowing this Court to make the correct finding without invading the exclusive fact-finding province of the Commission.

The appellant contends that the assault did not arise in the course of claimant's employment. Section 42-1-160 of the 1976 Code provides that a compensable injury must arise "in the course of the employment". This Court has interpreted this to mean that the accident must occur "within the period of employment at a place where the employee reasonably may be in the performance of his duties . . . or engaged in something incidental thereto". *Beam v. State Workmen's Compensation Fund,* 261 S. C. 327, 331, 200 S. E. (2d) 83, 85 (1973) ; *Kinsey v. Champion American Service Center, et al.,* 268 S. C. 177, 232 S. E. (2d) 720 (1977). The *Beam* case further states :

"The rule often recognized in workmen's compensation cases is that an employee, to be entitled to compensation, need not be in the actual performance of the duties for which he was expressly employed in order for his injury or death to be in the 'course of employment', and thus compensable. It is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment. *Kohlmayer v. Keller,* 24 Ohio St. (2d) 10, 53 Ohio Ops. (2d) 6, 263 N. E. (2d) 231." 261 S. C. at 332, 200 S. E. (2d) at 86.

It is not disputed that the assault took place on the appellant's premises at a place where the claimant was required to be in gaining access to her work. *See Williams v. S. C. State Hospital,* 245 S. C. 377, 140 S E (2d) 601 (1965). A cessation from work does not immediately arrest compensation coverage. *Kinsey, supra.* Although the claimant had requested leave after the supper break, she was not told it had been granted until within "two minutes" of

the time the assault occurred. We experience no difficulty in concluding that the assault occurred in the course of employment.

The appellant also contends that the accident did not ██ arise out of her employment with Southern Bell. Section 42-1-160 requires not only that the accident occur in the course of employment but further requires that the accident arise out of the employment. The "arising out of" requirement refers to the origin of the cause of the accident. *Bickley v. S. C. Elec. & Gas Co.,* 259 S. C. 463, 192 S. E. (2d) 866 (1972). Critical to a determination as to whether injuries from an assault arise out of employment is the origin of the dispute between the protagonists. Professor Larson has stated it thusly in his treatise:

Accidents out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work. Larson, Workmen's Compensation Law, Vol. 1, § 11.00.

The claimant testified that due to the harassment to █ which she had been subjected while working as a long distance telephone operator and the consequent emotional distress she was experiencing, she had filed a written request to be transferred to another job in a different work environment. This request for transfer was made on May 18, 1974, six days before the assault. She further testified that the following exchange of words took place between her and Thompson immediately prior to the assault:

"A. And I went out into the little entrance way and I had a cigarette and I started to out the cigarette; and she told me that I would never get anywhere with a job at Southern Bell—that her black people would—that I'd never get any of the jobs—that she knew who was going to get it (interruption).

Q. You're talking about the job you asked for when you requested the transfer?

A. Yes, sir (Pause) and she struck me and I fell.

. . . . .

Q. She mentioned, you said, that you would not get the transfer which you had requested, but that someone else would. Do you know who got the transfer?

A. Yes, sir.

Q. Who?

A. Magdelene Robertson.

Q. What is the relationship, if any, between Ms. Thompson and Magdelene Robertson?

A. They're good friends."

From the above recital of testimony it is apparent that there was ample testimony for the Commission to conclude that the quarrel originated from the work and, thus, arose out of the employment.

The last question argued by the appellant is that claimant suffers from a mental injury resulting solely from a mental stimuli which, it contends, is non-compensable in this jurisdiction. This question is rendered moot by reason of our conclusion that the Commission's finding that there was a physical assault upon the claimant is supported by competent evidence.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.