628 S.E.2d 279

**Charles WEST, Respondent,**

v.

**ALLIANCE CAPITAL and Frontier Insurance
Company, Appellants.**

**No. 4091.**

Court of Appeals of South Carolina.

Heard Jan. 11, 2006.

Decided March 6, 2006.

Rehearing Denied April 20, 2006.

248

Donald L. Van Riper, Suzanne C. Boulware, of Columbia, for Appellants.

William P. Walker, Jr., of Lexington, for Respondent.

KITTREDGE, J.:

In this workers' compensation case, an explosion at work injured Charles West while he performed repairs on his own truck during working hours and using his employer's equipment. The Workers' Compensation Commission adopted the order of the single commissioner and found that the injury arose out of and in the course of West's employment. The circuit court affirmed. We now affirm.

## FACTS

Alliance Capital employed West and leased his services to Meylan Enterprises. Frontier Insurance Company provided workers' compensation insurance to Alliance Capital and Meylan. Meylan conducts business in many states and is primarily involved in heavy industrial cleaning at nuclear power plants and manufacturing facilities. West's supervisor, Tex Williams, described West as a "foreman ... [who] overs[aw] the shop activities and all the mechanic work that goes on." The injury here occurred at Meylan's Rock Hill, South Carolina facility.

Meylan required its employees to come to work, clock in and, in the absence of an off-site job assignment, remain on the premises for their eight-hour shift. West and his fellow employees had to be present at the shop (or on a job assignment) to get paid. Because the actual work was sporadic, employees at the Rock Hill facility were to await calls at the shop and do various tasks in preparation for upcoming job assignments. While awaiting job assignments, employees could use their free time as they chose, provided they remained on site. Meylan employees generally spent about half of their time at the shop preparing for a project or on standby and the other half of their time working at job sites.

The single commissioner found that a custom and practice existed at Meylan's shops of allowing employees, during working hours, to work on their own vehicles in the shop, using shop equipment. Meylan's supervisors never prohibited or otherwise discouraged this practice. The record contains many examples of Meylan's acquiescence and approval of this practice, including an instance where Williams, the supervisor, brought his son's car into the shop for body work.

Meylan lacked a sufficient number of vehicles at the Rock Hill facility to transport people and equipment to the job sites. Williams, for example, often used his personal vehicle to take people and supplies to and from jobs. West informed Williams he had a truck that could be used to assist in transporting people and equipment. The vehicle was at that time inoperable, and Williams authorized West to travel to West Virginia to transport the truck to Rock Hill for repairs so Meylan could use it for transportation.

Several weeks before the accident, West and another Meylan employee drove to West Virginia in a Meylan truck and trailer. Meylan paid West for the trip, including his expenses. Meylan expected to benefit from use of the truck for its operations. When delivered to Rock Hill, the truck was stored in the enclosed shop area of the Meylan facility, where it remained for "probably two or three weeks" prior to the accident.

On the date of the accident, West completed his work and waited for other Meylan employees to return from a job assignment. During this downtime, West decided to work on the truck. West and another employee removed the gas tank from the truck to clean it. After emptying the gas out of the tank, West began sandblasting the inside of the tank using Meylan equipment. The tank exploded, injuring both employees.[1] West received second-degree and third-degree burns over fifty-four percent of his body.

The single commissioner found that the injury to West arose out of and in the course of his employment, noting that the truck repair was for Meylan's benefit, on company time, in Meylan's shop, with Meylan's equipment, and with Meylan's permission. The single commissioner thus found the injury compensable and awarded benefits. On review, the Commission affirmed, adopting the order of the single commissioner. Alliance Capital appealed to the circuit court, challenging the finding that the injury arose out of and in the course of West's employment. The circuit court affirmed. This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers' Compensation Commission. *See Lark v. Bi-Lo, Inc.,* 276 S.C. 130, 134, 276 S.E.2d 304, 306 (1981); S.C.Code Ann. § 1–23–380 (2005). A reviewing court may reverse or modify a decision of an administrative agency if "the findings, inferences, conclusions or decisions of that agency are clearly erroneous in view of the reliable, probative and

---

1. The other employee settled his workers' compensation claim.

substantial evidence on the whole record." *Hargrove v. Titan Textile Co.,* 360 S.C. 276, 288, 599 S.E.2d 604, 610 (Ct.App. 2004) (quoting *Bursey v. S.C. Dep't of Health and Envtl. Control,* 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct.App.2004)). Under the scope of review established in the APA, this Court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Frame v. Resort Servs., Inc.,* 357 S.C. 520, 527, 593 S.E.2d 491, 495 (Ct.App.2004).

## LAW/ANALYSIS

■■■ The South Carolina Workers' Compensation Act requires that an injury by accident must be one "arising out of" and "in the course of employment" to be compensable. *Broughton v. South of the Border,* 336 S.C. 488, 496, 520 S.E.2d 634, 638 (Ct.App.1999); *see also* S.C.Code Ann. § 42–1–160 (Supp.2005). The injury must both "arise out of" and occur "in the course of employment" to allow recovery. *Broughton,* 336 S.C. at 496, 520 S.E.2d at 634. As presented here, the question is largely one of fact for the Commission. *Id.* The claimant has the burden of proving facts sufficient to allow recovery under the Act. *Id.*

### I. Did the injury arise out of the employment?

Alliance Capital first argues that the injury did not arise out of West's employment because no causal connection existed between the working conditions and his injury. We disagree.

■■ "The phrase 'arising out of' in the Workers' Compensation Act refers to the injury's origin and cause." *Broughton,* 336 S.C. at 497, 520 S.E.2d at 638. For an injury to "arise out of" employment it must proximately cause the injury. *Id.* There must be a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Osteen v. Greenville County Sch. Dist.,* 333 S.C. 43, 50, 508 S.E.2d 21, 25 (1998).

The requisite causal connection has been described as follows:

[I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

*Douglas v. Spartan Mills, Startex Div.*, 245 S.C. 265, 269, 140 S.E.2d 173, 175 (1965).

Alliance Capital argues the employment did not proximately cause the injury because West's injury arose from merely permissive activities, not required duties. Alliance Capital relies on *Osteen*, 333 S.C. 43, 508 S.E.2d 21. In *Osteen*, an attendance clerk working at an elementary school injured her back filling her ice chest with ice from the school cafeteria and placing it into her car. *Id.* at 45–46, 508 S.E.2d at 22. The court held the activity to be permissive, and thus no causal connection existed between Osteen's employment and her injury. *Id.* at 50, 508 S.E.2d at 25.

In another case, the court found no causal connection when an employee was injured after leaving work to check on an ill employee. *Broughton*, 336 S.C. at 497–98, 520 S.E.2d at 638. The court noted that the claimant's job requirements did not include leaving work to check on sick co-workers. *Id.*

In both *Osteen* and *Broughton*, however, the claimants sustained injuries during activities entirely unrelated to their work duties. Here, the record supports the finding—to the substantial evidence standard—that the truck would be utilized in Meylan's operations following repairs. A shortage of trucks existed, and West had volunteered the use of his truck once it was restored to operable condition. According to

West, whose testimony the Commission deemed credible,[2] supervisor Williams "knew that I was wanting to use [the truck] for work." Williams authorized West to drive to West Virginia on company time and at company expense to bring the truck to the shop in Rock Hill, and permitted the truck to be kept at the shop. Williams knew the repairs were necessary to make the truck operational.

█ West's injury arose out of the employment because the truck was being repaired for Meylan's benefit, using company resources, with Meylan's consent. We conclude the record establishes the requisite causal connection between the working conditions and the injury.[3]

## II. Did the injury occur in the course of employment?

Alliance Capital next argues that the injury did not occur in the course of West's employment. We disagree.

█ "The phrase 'in the course of the employment' refers to the time, place, and circumstances under which the accident occurred." *Broughton,* 336 S.C. at 498, 520 S.E.2d at 639. "An injury occurs 'in the course of' employment within the meaning of the Workers' Compensation Act when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while fulfilling those duties or engaged in something incidental thereto." *Id.*

---

2. We decline, pursuant to our standard of review, Alliance Capital's invitation to assign credibility to Williams' contrary testimony. Fact-finding is a matter exclusively within the province of the Commission. *Kennedy v. Williamsburg County,* 242 S.C. 477, 480, 131 S.E.2d 512, 513 (1963).

3. Because we find substantial evidence supports the finding that West's truck was intended for use in Meylan's operations, we need not address the alternative grounds—the personal comfort doctrine—relied on by the Commission. *Osteen,* 333 S.C. at 47–48, 508 S.E.2d at 23 (observing that under workers' compensation law, "the personal comfort doctrine has consistently been limited to imperative acts such as eating, drinking, smoking, seeking relief from discomfort, preparing to begin or quit work, and resting or sleeping"); *see also Dukes v. Rural Metro Corp.,* 356 S.C. 107, 110, 587 S.E.2d 687, 689 (2003) ("The purpose of the personal comfort doctrine is to allow employees to attend to their biological personal requirements.").

A key factor in determining entitlement to compensation under this prong is whether an employee's activity benefited the employer. *Hicks v. Piedmont Cold Storage, Inc.*, 335 S.C. 46, 49, 515 S.E.2d 532, 533 (1999). In *Hicks*, the court denied compensation to an employee who was repairing a personal vehicle at the worksite. The circumstances of West's injury present an entirely different situation, for the injury in *Hicks* occurred on a Saturday, during non-working hours, during work for which the employee received no compensation, and the employer derived no benefit from the vehicle repair. *Id.* Here, the employer paid West for repairing the vehicle at the worksite, and the activity occurred during working hours, using tools furnished by his employer and for the purpose of remedying the employer's vehicle shortage at the Rock Hill site. The record sustains the finding that West's injury occurred in the course of his employment with Meylan.

## CONCLUSION

We hold that the truck repair was an activity arising out of and in the course of West's employment with Meylan, and the resulting injury was compensable.

**AFFIRMED.**

HEARN, C.J., and STILWELL, J., concur.