656 S.E.2d 753

Jerry Danny **HALL**, Employee, Respondent,

v.

**DESERT AIRE, INC.**, Employer and Travelers Casualty & Surety Co., Carrier, Appellants.

No. 4324.

Court of Appeals of South Carolina.

Heard Dec. 13, 2007.

Decided Dec. 20, 2007.

Rehearing Denied Feb. 14, 2008.

F. Reid Warder, Jr., of Charleston, for Employer/Carrier/Appellants.

Malcolm M. Crosland, Jr., of Charleston, for Respondent.

ANDERSON, J.

Claimant Jerry Danny Hall (Hall) sustained injuries as a result of a motor vehicle accident that occurred while he was traveling on a business trip. The Appellate Panel awarded workers' compensation benefits, and the circuit court affirmed. Employer and insurance carrier (collectively "Desert Aire") appeal on the ground Hall's injury did not arise out of and in the course of his employment. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Hall began working for Desert Aire in 1997 as regional sales manager and was national sales manager at the time of his injury. Desert Aire manufactures and sells industrial and commercial dehumidification equipment. The corporation markets its product through independent sales companies that represent Desert Aire's equipment to prospective buyers. In addition, Desert Aire promotes sales by encouraging the engineers who design large facilities to include Desert Aire equipment in their specifications.

As the national sales manager for Desert Aire, Hall was responsible for training Desert Aire's regional sales staff and independent sales representatives. He routinely interacted with sales agents and engineers to facilitate the sale and specification of Desert Aire units. Because the sales and engineering firms are located throughout the country, Hall's employment necessitated an average of four days of business travel every week.

Hall's duties included entertaining potential customers and engineers who might recommend the company's product. In addition, he regularly conducted training for sales agents during business luncheons and dinners. Alcohol was frequently served at these functions, which were organized, sponsored, and paid for by Desert Aire. Hall had an entertainment budget designed specifically for entertaining prospective sales contacts and training sales agents. He confirmed that serving

alcohol at these business events was common practice, "part of the culture of the business, in general." Hall testified: "The HVAC industry, the architectural products when you are getting the products specified has almost always used entertainment, dinners, and a lot of people drink alcohol socially and lightens up an [sic] you talk more freely."

In July of 2004 Hall flew to Little Rock, Arkansas, to meet with agents of Air Tech, Inc., one of the independent sales companies that sold Desert Aire products. The purpose of his trip was to work with the sales representatives, to visit with key engineers, and to plan a strategy for securing the Walmart account. From Arkansas, Hall intended to continue his business travel to Omaha, Nebraska and Des Moines, Iowa. He envisioned the excursion would last a little over a week. Hall averred every aspect of his journey was for Desert Aire sales-related business; no part of his trip was for a personal purpose.

In Arkansas, Hall worked closely with Charlie Brunner, a sales agent for Air Tech. On July 16, 2004, Hall and his business associates scheduled a dinner meeting at the Brunner home. In attendance, in addition to Hall and Brunner, were John Oliver, Air Tech owner, Charlotte Brunner, Air Tech sales associate, and Edward Osterman, Desert Aire regional sales manager. Hall maintains the discussion throughout the evening focused on Desert Aire sales, including long-term plans and strategies for obtaining the Walmart account. Hall and Brunner both consumed alcohol before and during the dinner meeting.

Hall asserts the business discussion persisted after the meal ended. He and Brunner walked outside and around Brunner's yard, "still discussing things." Eventually, they decided to change venue and continue talking while riding around the block in Brunner's jeep. Brunner drove and Hall occupied the front passenger seat. Approximately 300 yards from Brunner's home, the jeep overturned and Hall sustained multiple injuries that required extended hospitalization and medical treatment. Brunner suffered fatal injuries.

Hall sought workers' compensation benefits and Desert Aire denied his claim, alleging Hall's injuries did not arise out of and in the course of his employment. The single commission-

er found Hall's claim compensable, deciding Hall had not deviated from the course and scope of his employment at the time of his accident. The single commissioner added: "[e]ven if Hall's departure from the Brunner home on the evening of the accident were a deviation from his employment (which I find specifically was not the case) such a deviation was minimal and did not remove Hall from continuing to act within the course and scope of his employment at the time of the accident."

The Appellate Panel unanimously affirmed the single commissioner's findings of fact and conclusions of law, adopting the order in its entirety and incorporating it by reference. The circuit court affirmed the decision of the Appellate Panel, with one exception. The finding by the Appellate Panel that Hall suffered an injury to his neck and left leg as a result of the compensable accident was reversed.[1]

## ISSUE

Does substantial evidence support the factual finding that Hall's injury arose out of and in the course of his employment, concomitantly satisfying the legal standard for compensability under section 42–1–160 of the South Carolina Code of Laws?

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134, 276 S.E.2d 304, 306 (1981); *Gray v. Club Group, Ltd.*, 339 S.C. 173, 182, 528 S.E.2d 435, 440 (Ct.App.2000) (*cert denied*); *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 288, 599 S.E.2d 604, 610 (Ct.App.2004); *Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 516, 526 S.E.2d 725, 728 (Ct.App.2000). As provided by the APA, a reviewing court

> may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand

---

1. The record indicates Hall conceded no compensable injuries were sustained to his neck or left leg.

the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are affected by other error of law; [or] are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

S.C.Code Ann. § 1–23–380(A)(5)(d)(e)(Supp.2006); *see also Hall v. United Rentals, Inc.,* 371 S.C. 69, 77, 636 S.E.2d 876, 881 (Ct.App.2006); *Bass v. Kenco Group,* 366 S.C. 450, 456, 622 S.E.2d 577, 580 (Ct.App.2005); *Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 363 S.C. 612, 619, 611 S.E.2d 297, 300 (Ct.App.2005) *cert. denied,* July 2007.

 Pursuant to the APA, this court's review is limited to deciding whether the Appellate Panel's decision is unsupported by substantial evidence or is controlled by some error of law. *Grant v. Grant Textiles,* 372 S.C. 196, 200, 641 S.E.2d 869, 871 (2007); *Gibson,* 338 S.C. at 516, 526 S.E.2d at 728. "Any review of the Appellate Panel's factual findings is governed by the substantial evidence standard." *Lockridge v. Santens of Am., Inc.,* 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001). The Appellate Panel's decision must be affirmed if supported by substantial evidence in the record. *Shuler v. Gregory Elec.,* 366 S.C. 435, 440, 622 S.E.2d 569, 571 (Ct.App.2005) (citing *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 160, 519 S.E.2d 102, 105 (1999)). It is not within the reviewing court's province to reverse findings of the Appellate Panel which are supported by substantial evidence. *Frame v. Resort Servs., Inc.,* 357 S.C. 520, 528, 593 S.E.2d 491, 495 (Ct.App.2004); *Broughton v. South of the Border,* 336 S.C. 488, 496, 520 S.E.2d 634, 637 (Ct.App.1999). The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Kenco Group,* 366 S.C. at 458, 622 S.E.2d at 581; *Frame,* 357 S.C. at 528, 593 S.E.2d at 495; *Broughton,* 336 S.C. at 496, 520 S.E.2d at 637.

 Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the

administrative agency reached in order to justify its action. *Pratt v. Morris Roofing, Inc.*, 357 S.C. 619, 594 S.E.2d 272 (2004); *Jones v. Georgia–Pacific Corp.*, 355 S.C. 413, 586 S.E.2d 111 (2003). Substantial evidence is something less than the weight of the evidence. *Office of Regulatory Staff v. S.C. Pub. Serv. Comm'n*, 374 S.C. 46, 647 S.E.2d 223 (2007). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Sharpe*, 336 S.C. at 160, 519 S.E.2d at 105; *Smith v. NCCI Inc.*, 369 S.C. 236, 247, 631 S.E.2d 268, 274 (Ct.App.2006); *DuRant v. S.C. Dep't of Health & Envtl. Control*, 361 S.C. 416, 420, 604 S.E.2d 704, 707 (Ct.App.2004). ·

 The Appellate Panel is the ultimate fact finder in Workers' Compensation cases and is not bound by the single commissioner's findings of fact. *Bass v. Isochem*, 365 S.C. 454, 468, 617 S.E.2d 369, 376 (Ct.App.2005); *Frame*, 357 S.C. at 528, 593 S.E.2d at 495; *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 281, 519 S.E.2d 583, 591 (Ct.App.1999). The final determination of witness credibility and the weight assigned to the evidence is reserved to the Appellate Panel. *Shealy v. Aiken County*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000); *Frame*, 357 S.C. at 528, 593 S.E.2d at 495. Where there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive. *Brown v. Greenwood Mills, Inc.*, 366 S.C. 379, 393, 622 S.E.2d 546, 554 (Ct.App.2005); *Etheredge v. Monsanto Co.*, 349 S.C. 451, 455, 562 S.E.2d 679, 681 (Ct.App.2002); *see also Mullinax v. Winn–Dixie Stores, Inc.*, 318 S.C. 431, 435, 458 S.E.2d 76, 78 (Ct.App.1995) ("Where the medical evidence conflicts, the findings of fact of the [Appellate Panel] are conclusive.").

## *LAW/ANALYSIS*

Desert Aire contends Hall's injury did not arise out of and in the course of his employment. We disagree.

To be compensable, an injury by accident must be one "arising out of and in the course of employment." S.C.Code Ann. § 42–1–160 (Supp.2006); *Grant v. Grant Textiles*, 372 S.C. 196, 201, 641 S.E.2d 869, 871 (2007); *Broughton v. South*

*of the Border,* 336 S.C. 488, 496, 520 S.E.2d 634, 638 (Ct.App. 1999).

The phrase "arising out of" refers to the injury's origin and cause; whereas, "in the course of" refers to the time, place, and circumstances under which the injury occurred. *Baggott v. Southern Music, Inc.,* 330 S.C. 1, 4, 496 S.E.2d 852, 854 (1998); *Owings v. Anderson County Sheriff's Dep't,* 315 S.C. 297, 300, 433 S.E.2d 869, 871 (1993); *Loges v. Mack Trucks, Inc.,* 308 S.C. 134, 138, 417 S.E.2d 538, 541 (1992). Although the requirements are somewhat overlapping, they are not synonymous and both must exist simultaneously to allow the claimant to recover workers' compensation benefits. *Osteen v. Greenville County School Dist.,* 333 S.C. 43, 49, 508 S.E.2d 21, 24 (1998); *Broughton,* 336 S.C. at 496, 520 S.E.2d at 638.

While an injury must both arise out of and in the course of employment for an employee to recover for an injury, "there are circumstances when injuries arising out of acts outside the scope of the employee's regular duties may be compensable. These circumstances have been applied to: (1) acts benefiting co-employees; (2) acts benefiting customers or strangers; (3) acts benefiting the claimant; and (4) acts benefiting the employer privately." *Grant,* 372 S.C. 196, 202, 641 S.E.2d at 872.

Whether an accident arises out of and is in the course and scope of employment is largely a question of fact for the Appellate Panel. *Pratt v. Morris Roofing, Inc.,* 357 S.C. 619, 622, 594 S.E.2d 272, 274 (2004); *Gibson v. Spartanburg Sch. Dist. No. 3,* 338 S.C. 510, 518, 526 S.E.2d 725, 729 (Ct.App.2000). The claimant has the burden of proving facts sufficient to allow recovery under the Act. *West v. Alliance Capital,* 368 S.C. 246, 252, 628 S.E.2d 279, 282 (Ct.App.2006). However, when the facts are undisputed, whether an accident is compensable is a question of law. *Shuler v. Gregory Elec.,* 366 S.C. 435, 622 S.E.2d 569 (Ct.App.2005); *Gibson,* 338 S.C. at 518, 526 S.E.2d at 729.

In determining if an accident arose out of and in the course of employment, each case must be decided with reference to its own attendant circumstances. *Lanford v.*

*Clinton Cotton Mills,* 204 S.C. 423, 425, 30 S.E.2d 36, 41 (1944). The general policy in South Carolina is to construe the Workers' Compensation Act in favor of coverage, and any reasonable doubts as to construction should be resolved in favor of the claimant. *Davis v. S.C. Dep't of Corr.,* 289 S.C. 123, 125, 345 S.E.2d 245, 246 (1986).

## A. Raison d'etre mandated under section 42–1–160 for compensability.

 Desert Aire contends Hall's employment did not proximately cause his injuries because the accident occurred during the jeep ride, while both Brunner and Hall were intoxicated and incapable of meaningful business discussions. We disagree.

 An accident arises out of employment when the employment is a contributing proximate cause of the accident. *Simmons v. City of Charleston,* 349 S.C. 64, 72, 562 S.E.2d 476, 480 (Ct.App.2002). It must be apparent to the rational mind, considering all the circumstances, that a causal relationship exists between the conditions under which the work is performed and the resulting injury. *Smith v. NCCI, Inc.,* 369 S.C. 236, 253, 631 S.E.2d 268, 277 (Ct.App.2006); *Broughton v. South of the Border,* 336 S.C. 488, 497, 520 S.E.2d 634, 638 (Ct.App.1999).

 "[I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment." *Gray v. Club Group, Ltd.,* 339 S.C. 173, 187, 528 S.E.2d 435, 442 (Ct.App. 2000) (quoting *Douglas v. Spartan Mills, Startex Div.,* 245 S.C. 265, 269, 140 S.E.2d 173, 175 (1965)). The injury must be fairly traced to the employment as a contributing proximate cause and cannot be the result of conditions to which the worker would be equally exposed outside of the employment. *Id.*

> The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen

or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

*Id.*

In *Gray*, 339 S.C. at 173, 528 S.E.2d at 435, this court upheld the award of benefits to an employee's widow. Gray died as a result of injuries he sustained in a motor vehicle accident while traveling from his home to pick up items for delivery. He was employed by Club Group to work at Harbour Town in Hilton Head. *Id.* at 179, 528 S.E.2d at 438. Gray's duties included greeting guests, delivering documents, courier work, running errands, and transporting guests. *Id.* He was paid an hourly wage and normally worked Monday through Thursday, with Friday off. *Id.* at 185, 528 S.E.2d at 441.

A co-owner of Club Group engaged Gray to transport payroll materials between Henderson and Harbor Town on his day off, using his own vehicle, for a $35 fee that included mileage. *Id.* at 179, 528 S.E.2d at 438. The mileage was calculated from Gray's home in Savannah to Henderson, then to Harbour Town, back to Henderson, and then to Gray's home. *Id.*

The automobile accident occurred as Gray drove from his home in Savannah to Henderson to pick up payroll materials for his Friday job. Club Group alleged his injury did not arise out of Gray's employment. We concluded:

> There is substantial evidence in the record to support a finding that Gray was required to pick up his deliveries in the morning, and *but for* his employment he would not have been traveling to Henderson. Instead, he would have been traveling to Hilton Head to pick up his paycheck, as was his custom prior to his employment on Fridays.

*Id.* at 187, 528 S.E.2d at 443 (emphasis supplied). The essential function of Gray's Friday employment was travel. Clearly, he could not accomplish his responsibilities *but for* his traveling. Gray's employer specifically compensated him for his travel, based on round-trip mileage from Gray's home. Gray's employment was, therefore, the contributing proximate cause of his death.

In *West v. Alliance Capital,* Alliance challenged the award of benefits to an injured worker who performed repairs on his own truck during working hours. 368 S.C. 246, 628 S.E.2d 279 (Ct.App.2006). Alliance asserted the worker's activities were permissive rather than work-related. *Id.* Alliance employed West and leased his services to Meylan Enterprises. *Id.* at 249, 628 S.E.2d at 281. The custom and practice existed at Meylan's shops of allowing employees, during working hours, to work on their own vehicles in the shop, using shop equipment. *Id.* at 250, 628 S.E.2d at 281. Because Meylan lacked a sufficient number of usable vehicles, West volunteered the use of his truck after it was restored to operable condition. *Id.* at 252, 628 S.E.2d at 283.

West was engaged in activities related to his employment when he sustained his injury. Meylan intended to use West's truck following its repairs to address its shortage of available vehicles. *Id.* Meylan authorized West to travel on company time and at company expense to retrieve the truck and permitted the truck to be kept at the shop. *Id.* at 253, 628 S.E.2d at 283. Moreover, Meylan understood repairs were necessary to make the truck operational. *Id.* Affirming the award of benefits, we reasoned that "West's injury arose out of the employment because the truck was being repaired for Meylan's benefit, using company resources, with Meylan's consent. We conclude the record establishes the requisite causal connection between the working conditions and the injury." *Id.*

Our supreme court recently reversed the denial of workers' compensation benefits in *Grant v. Grant Textiles,* 372 S.C. 196, 201, 641 S.E.2d 869, 872 (2007). Grant was vice-president of a family-owned business, Grant Textiles. *Id.* at 198, 641 S.E.2d at 870. After making a business delivery, Grant drove, in a company-owned truck, to Clinton House and Meeting Plantation, a corporate hunting preserve where Grant Textiles frequently entertained clients. *Id.* at 198–99, 641 S.E.2d at 870. Grant intended to meet his father, the CEO of Grant Textiles, and customers who were interested in purchasing equipment from the company. *Id.*

As Grant neared the entrance to the reserve, he swerved onto the shoulder to avoid hitting an object in the highway.

*Id.* He parked at the entrance to Clinton House and walked back to the highway to remove the debris he believed was a hazard to his potential customers and the general public. *Id.* A moving vehicle hit Grant and injured him. *Id.*

The single commissioner awarded benefits and the Appellate Panel reversed, concluding "(1) the accident did not arise out of Claimant's employment because the causative element of his accident had no connection with his employment; and (2) that Claimant's job duties were in no way related to road maintenance." *Id.* at 200, 641 S.E.2d at 871. The circuit court reversed, declaring the Appellate Panel erred in its application of the law. *Id.* The Court of Appeals reversed and reinstated the decision of the Appellate Panel, holding Grant's injuries did not arise out of his employment with Grant Textiles because the cause of the accident had no relation to his regular employment duties. *Id.*

The supreme court held the Appellate Panel erred in finding no causal connection between Grant's accident and his employment. The accident would not have happened *but for* Grant's business trip to the Clinton House to meet his father and his employer's customers. *Id.* at 202, 641 S.E.2d at 872 (emphasis supplied). Grant's business trip and the duties incidental to it were an integral part of his responsibility as an employee of Grant Textiles.

Contrastively, this court reversed the award of benefits to an employee who was injured when she left work to check on a sick co-worker. *Broughton,* 336 S.C. at 488, 520 S.E.2d at 634. Upon reporting for her shift as a Kardex clerk, Broughton read an unaddressed note left by a co-worker indicating she was sick and wanted someone to check on her. *Id.* at 493, 520 S.E.2d at 636. Broughton's supervisors were absent, and Broughton did not exercise a supervisory role over any other employees. *Id.* Moreover, her duties never required her to leave her employer's premises. *Id.*

Without clocking out, Broughton decided to leave the workplace and check on the sick co-worker, where she fell and sustained an injury. *Id.* at 494, 520 S.E.2d at 637. We held:

There is simply no causal connection between Broughton's employment and her injury. Her employment as a Kardex clerk in no way required her to check on sick employees.

The accident was not related to the performance of any duties as an employee by Broughton. Checking on sick co-workers is not a job requirement of Kardex clerks.

*Id.* at 497–98, 520 S.E.2d at 638; *see also Osteen v. Greenville County Sch. Dist.*, 333 S.C. 43, 50, 508 S.E.2d 21, 25 (1998) (holding no causal connection existed between an attendance clerk's employment and her injury; "her employment in no way required her to be placing a chest full of ice, for use over the weekend, into the trunk of her vehicle").

In the instant case, the Appellate Panel found Hall's credible testimony indicated the evening's activities were consistent with and logically related to Hall's employment responsibilities. Like the claimants in *Gray* and *Grant*, Hall's purpose in traveling was wholly and exclusively in pursuit of his duties as national sales manager for Desert Aire. Nothing in the evidentiary record suggests he engaged in any activities of a personal nature that might break the causal link between his employment and his injuries. Only business associates attended the gathering at the Brunner home and their conversation focused on plans and strategies to promote the sale of Desert Aire equipment. Although the business dinner ended at approximately 9:00 p.m., Hall and Brunner continued discussing their marketing plans for Desert Aire as they walked around the yard and eventually decided to take a drive in Brunner's jeep.

The custom and practice of Desert Aire employees was to frequently conduct the company's business in the context of entertaining. Desert Aire provided Hall with an expense account specifically for that purpose, understanding a portion of the funds would be spent on alcohol. As part of the culture of Hall's company and "business in general," alcohol was served and consumed before and during the dinner meeting on the night of the accident. Desert Aire, like Meylan in *West*, benefited from the business customs and practices endorsed by the employer. Here, the custom and practice of conducting business in an entertaining environment fostered good working relationships, facilitated planning, and furthered Desert Aire's interests.

Desert Aire's assertion that alcohol rendered Hall incapable of discussing business is without substantial evidentiary support. Hall's blood alcohol level several hours following the

accident was .121 percent and Brunner's was .234 percent. Desert Aire's expert, Dr. Roger A. Russell, opined that Brunner and Hall could not have had meaningful business conversation at the time of the accident due, in part, to intoxication. Hall's expert, Dr. Robert Bennett, reported that meaningful business conversation requires only cognitive functioning and does not require motor skills. Bennett submitted empirical data indicating that 50% of individuals are not grossly intoxicated at a blood alcohol level of .15. In addition, he indicated that alcohol may, in fact, result in a beneficial effect on cognitive function.

In deciding whether substantial evidence exists, it is appropriate to consider both lay and expert evidence. *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 296, 599 S.E.2d 604, 614 (Ct.App.2004) (citing *Sharpe v. Case Produce, Inc.*, 336 S.C. 154, 519 S.E.2d 102 (1999)). Adopting the single commissioner's finding, the Appellate Panel placed greater weight on Dr. Bennett's opinion and report and Hall's credible testimony regarding the content of the discussions with Brunner at the time of the accident.

One of the bases of Dr. Russell's opinions with regard to the level of intoxication of Hall assumed Hall was of the same height and weight as Mr. Charles Brunner. Hall's testimony clearly established that Mr. Brunner was significantly taller and over 50 pounds heavier than Hall. Dr. Russell's opinions also assume Hall consumed as much alcohol as Mr. Brunner; however, there is no evidence supporting this assumption.

The Appellate Panel concluded Hall did not consume sufficient alcohol to render him unable to engage in business discussions with Brunner immediately prior to the accident. Furthermore, Desert Aire's contention that Brunner's alleged intoxication proximately caused the accident is speculative. The record is devoid of any evidence establishing why Brunner's jeep overturned.

Hall was engaged in ongoing discussions with business associates involving the marketing and sale of Desert Aire equipment at the time of the accident. *But for* these employment activities, Hall would not have traveled to Little Rock, attended the business dinner at the Brunner home, or contin-

ued his business conversation with Brunner on into the evening. At all times during the day and evening Hall was executing his duties and responsibilities as national sales manager for Desert Aire. Moreover, consuming alcohol at employer-sponsored functions was part of the custom and practice of the business culture, and Hall's job exposed him to the hazards incidental to that custom and practice. The Appellate Panel's finding that Hall's injuries arose out of his employment is *not* clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The record contains substantial evidence from which reasonable minds could conclude that Hall's employment was a contributing proximate cause of his accident and his resulting injuries arose out of his employment with Desert Aire.

### B. The course of employment prong of section 42–1–160.

An injury occurs "in the course of" employment when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while fulfilling those duties or engaged in something incidental thereto. *Baggott v. Southern Music, Inc.*, 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998) citing *Beam v. State Workmen's Compensation Fund*, 261 S.C. 327, 331, 200 S.E.2d 83, 85 (1973); *Gibson v. Spartanburg School Dist. No. 3*, 338 S.C. 510, 519, 526 S.E.2d 725, 729–30 (Ct.App.2000); *Broughton v. South of the Border*, 336 S.C. 488, 499, 520 S.E.2d 634, 639 (Ct.App.1999). An employee need not be in the actual performance of the duties for which he was expressly employed in order for his injury to be "in the course of" employment. *Grant v. Grant Textiles*, 372 S.C. 196, 201, 641 S.E.2d 869, 871 (2007); *Skipper v. Southern Bell Tel. & Tel. Co.*, 271 S.C. 152, 156, 246 S.E.2d 94, 96 (1978) (citing *Beam*, 261 S.C. at 331, 200 S.E.2d at 85). "It is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment." *Skipper*, 271 S.C. at 156, 246 S.E.2d at 96 (quoting *Kohlmayer v. Keller*, 24 Ohio St.2d 10, 263 N.E.2d 231, 233 (1970)). "An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interest, whether or not the employee's own assigned work is thereby furthered, is within the

course of employment." *Grant,* 372 S.C. at 202, 641 S.E.2d at 871–72 (citing *Howell v. Kash & Karry,* 264 S.C. 298, 301, 214 S.E.2d 821, 822 (1975)).

It is well settled that "traveling employees are generally within the course of their employment from the time they leave home on a business trip until they return, for the self-evident reason that the traveling itself is a large part of the job." Arthur Larson, *Larson's Worker' Compensation Law,* § 14.01 (Lexis–Nexis 2004). However, this general rule is subject to challenge when an injury occurs while the employee has deviated from his business route or purpose. *See Merritt v. Smith,* 269 S.C. 301, 307, 237 S.E.2d 366, 369 (1977) (noting "the trip to and from an eating establishment, as well as the taking of meals themselves, while on out-of-town business are within the course and scope of employment unless the circumstances attending the taking of the meal constitutes [sic] a deviation"). Resolving this type of compensability issue usually hinges on whether the injury occurred during a "slight" or "substantial" deviation.

Desert Aire's characterization of Hall and Brunner's drive as a "drunken joy ride" implies Hall substantially deviated from his business purpose of promoting Desert Aire sales. In support of this contention, Desert Aire relies on *Brownlee v. Wetterau Food Servs.,* 288 S.C. 82, 339 S.E.2d 694 (Ct.App. 1986); *Boykin v. Prioleau,* 255 S.C. 437, 179 S.E.2d 599 (1971); and *Grice v. National Cash Register Co.,* 250 S.C. 1, 156 S.E.2d 321 (1967).

In *Brownlee,* an employee died of injuries received while out of state at a training seminar. 288 S.C. at 83, 339 S.E.2d at 695. This court affirmed the Appellate Panel's finding that the employee was not in the course of his employment at time of death. *Id.* The training seminar began each day at 7:00 in the morning and ended at approximately 10:00 in the evening. *Id.* at 84, 339 S.E.2d at 695. Employees attending the seminar stayed at the motel where it was presented. *Id.* The fatal accident occurred at 1:55 a.m., several hours after the last scheduled seminar event and at some distance from the motel where the attendees stayed. *Id.* The evidence indicated the employee, along with three other seminar attendees, had planned to see a movie after the seminar events. *Id.*

In affirming the denial of benefits, we determined the record lacked any evidence the employee died while attending either a job-related function or employer-sponsored event. *Id.* at 85, 339 S.E.2d at 695. Instead, substantial evidence showed he "died while engaged in an outing that occurred after work, away from the premises of his employer, and at a time when his employer exercised no control over his activities." *Id.*

Similarly, in *Grice,* the Appellate Panel denied benefits when an employee, who was out of town for training, was killed while returning from a July fourth holiday picnic with other employees. 250 S.C. 1, 156 S.E.2d 321. The evidence failed to demonstrate the employee sustained his injury in the course of his employment. *Id.* Co-employees, without the knowledge or endorsement of the employer, organized the picnic. *Id.* at 4, 156 S.E.2d at 323. Moreover, it was not held during regular work hours. *Id.* In affirming the denial of benefits, our supreme court summarized:

> There is a total absence of any testimony tending to show that the accident from which deceased sustained the fatal injuries had its origin in a risk created by the necessity of being away from home. The picnic was not arranged, sponsored, or suggested by the employer. It was solely an outing planned by the deceased and his co-employees, taking place after work hours, off the premises of the employer, and during hours when the employer exercised no control over the employee's activities. Insofar as the record discloses, the employer had no knowledge of the picnic. The attendance of the deceased was purely voluntary on his part.

*Id.* at 5, 156 S.E.2d at 323.

*Boykin v. Prioleau* involved a wrongful death action against a deceased defendant whose duties required transporting younger co-employees, including Boykin, to their homes after work. 255 S.C. 437, 179 S.E.2d 599 (1971). On the evening of the fatal accident, the defendant departed from his usual route and took the co-employees on a three-hour "joy ride" that included several stops and consumption of intoxicants. All but one of the employees died in the accident. The issue at trial was whether the accident occurred during a substantial deviation from the route delivering the employees home, or whether

the defendant had resumed the scope and course of his employment at the time of the fatal accident. If the defendant had returned to the course of his employment, workers' compensation was the exclusive remedy and the wrongful death action was barred. The supreme court held this question was one for the jury and reversed the trial court's directed verdict in the defendant's favor.

Tangentially, the court noted the workers' compensation hearing commissioner awarded death benefits to Boykin's survivors. The claim was settled without admission of liability before appeal to the Appellate Panel was heard. However, the court did opine that a substantial deviation occurred during the drive to the employees' homes:

The only reasonable inference from the facts which have been stated is that almost immediately upon driving away from his employer's place of business, [defendant] forsook the task assigned to him and embarked upon the pursuit of his own ends. It is abundantly clear that while thus engaged [defendant] was not conducting his employer's business within the meaning of the statute. Whether upon leaving the restaurant, several miles from the point of deviation, and starting back toward Columbia [defendant] resumed the scope and course of his employment was, at best from defendant's standpoint, a jury issue. We decide only that the court erred in resolving this issue in defendant's favor as a matter of law.

Hall cites *Beam v. State Workmen's Compensation Fund*, 261 S.C. 327, 200 S.E.2d 83 (1973) in support of his contention that his injury occurred in the course of employment. In *Beam*, two teachers were killed in an automobile accident en route from Gaffney to Columbia to attend a South Carolina Education Association meeting. *Beam*, 261 S.C. at 330, 200 S.E.2d at 85. The Appellate Panel awarded workers' compensation benefits, finding the teachers' deaths arose out of and in the course of their employment. *Id.* Our supreme court affirmed, adopting the principle established by the Ohio Supreme Court that in order for injury or death to be in the "course of employment" "it is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment." *Id.* at 332, 200 S.E.2d at 86

(quoting *Kohlmayer v. Keller*, 24 Ohio St.2d 10, 263 N.E.2d 231, 233 (1970)). The evidence indicated the teachers' attendance at the association meeting, while not compulsory, was encouraged, and expected as part of their contractual obligation to participate in and attend the meetings of professional organizations, including those of the South Carolina Education Association. *Id.* at 331, 200 S.E.2d at 85. Concluding the teachers died in the course of their employment, the court observed "they were not exercising a personal privilege wholly apart from their employment or their employer's interest, but were about the performance of an act, incidental to and recognized as of value by their superintendent in connection with their duties as high school teachers." *Id.* at 333, 200 S.E.2d at 86.

We deem *Brownlee*, *Boykin*, and *Grice* factually and legally distinguishable from the instant case. Though the claimants in *Brownlee* and *Grice* were out of town on business travel, their injuries did not result from risks created by the necessity of being away from home. The events that led to each of the fatal accidents originated independently of any employee's effort to further the interests of his employer. Grice's attendance at a holiday picnic, Brownlee's assumed movie excursion, and the "joy ride" that led to Boykin's demise, were not within periods of employment. Nor did these claimants' activities take place at locations where they might reasonably perform their duties, at a time during which they fulfilled those duties, or while engaged in something incidental thereto.

In contraposition, the Appellate Panel found Hall's exclusive purpose for his trip to Little Rock was to represent and advance Desert Aire's interests. The nature of Hall's employment required extensive travel. His duties were necessarily performed in a variety of settings and during the course of an entire day, rather than at a time and in a location designated by his employer. Desert Aire financially supported the custom and practice of entertaining sales agents, engineers, and potential customers to promote sales of Desert Aire equipment.

Pellucidly, the evidentiary record exuberates that Hall was engaged in ongoing discussions regarding planning for sales activities on behalf of Desert Aire at the time of the accident.

The accident occurred within the period of employment, at a place where Hall was reasonably in the performance of his duties and was fulfilling those duties or engaged in activities incidental to that employment. Like the claimants in *Beam*, Hall was not exercising a personal privilege wholly apart from Desert Aire's interests. Rather, Hall's ongoing business discussion with Brunner was an act, incidental to and recognized as beneficial by Desert Aire in connection with Hall's duties as national sales manager.

## CONCLUSION

We hold substantial evidence supports the factual finding that Hall's injury arose out of and in the course of employment with Desert Aire, illatively satisfying the legal standard for compensability under section 42–1–160 of the South Carolina Code of Laws.

Accordingly, the decision of the circuit court is

**AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.