THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Daryl Carlson, Appellant,
 
 
 

v.

 
 
 
 Poston Packing
 Company, Inc., Employer, and Capital City Insurance Company, Carrier, Respondents.
 
 
 

Appeal From Florence County
Thomas A. Russo, Circuit Court Judge

Unpublished Opinion No.  2008-UP-243
 Submitted March 1, 2008  Filed April 23,
 2008

AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED

 
 
 
 Mary Cecelia Robinson and William L.
 Smith, II, both of Columbia, for Appellant.
 Grady L. Beard, of Columbia, for
 Respondents.
 
 
 

PER CURIAM:  In
 this workers compensation case, Darryl Carlson sought benefits from his
 employer, Poston Packing Company, Inc., and its carrier (collectively, Poston)
 after he slipped and fell while loading crates of food into a freezer.  The
 Single Commissioner found Carlson suffered multiple injuries to his groin due
 to the accident, including an inguinal hernia diagnosed eight months after the
 fall, as well as a psychological injury.  The Single Commissioner further found
 Carlson had not yet reached maximum medical improvement (MMI).  An Appellate
 Panel of the South Carolina Workers Compensation Commission (the Commission)
 upheld the determination that Carlson suffered injuries to his groin, but
 specifically reversed the portions of the order finding Carlson had suffered an
 inguinal hernia and a psychological injury as a result of the accident and that
 he had not reached MMI.  The circuit court affirmed the Commissions order, and
 Carlson appeals.  We affirm insofar as there is substantial evidence to support
 the Commissions determination that Carlson has not established his  claim for
 a psychological injury. We reverse the Commissions findings that Carlson has
 not established his claim for a hernia and that Carlson has reached MMI. 
 Finally, we remand this case to the circuit court for it to direct the
 Commission to make a new determination as to MMI in light of our holding.[1]
The South Carolina Administrative Procedures Act (APA) establishes
 the standard for judicial review of decisions of the Commission.  West v. Alliance Capital, 368 S.C. 246, 628 S.E.2d 279 (Ct. App. 2006).  Under the APA, an appellate court may reverse or modify the
 decision of the Commission if the Commissions findings, inferences,
 conclusions, or decisions are affected by an error of law or are clearly
 erroneous in view of the substantial evidence in the whole record.  Id.; see also S.C. Code Ann. § 1-23-380(A)(5)(d) & (e) (Supp. 2007). 
 Substantial evidence is evidence that, considering the record as a whole, would
 allow reasonable minds to reach the conclusion reached by the Commission.  Rodney
 v. Michelin Tire Corp., 320 S.C. 515, 466 S.E.2d 357 (1996).
 The
 Commission is the ultimate fact-finder in workers compensation cases and is
 not bound by the Single Commissioners findings of fact.  Brayboy v. Clark
 Heating Co., 306 S.C. 56, 409 S.E.2d 767 (1991); Ross v. Am. Red Cross,
 298 S.C. 490, 381 S.E.2d 728 (1989).  The final determination of witness
 credibility and the weight to be accorded evidence is reserved to the
 Commission.  Parsons v. Georgetown Steel, 318 S.C. 63, 456 S.E.2d 366
 (1995).  We may not substitute our judgment for that of the Commission
 concerning the weight of the evidence on questions of fact.  See S.C.
 Code Ann. § 1-23-380(A)(5) (Supp. 2007).  The possibility of drawing two
 inconsistent conclusions from the evidence does not mean the agencys
 conclusion is unsupported by substantial evidence.  Ellis v. Spartan Mills,
 276 S.C. 216, 277 S.E.2d 590 (1981). 
1.  Consideration
 of medical report and denial of claim for psychological injury (Carlsons
 Issues I & II).  We hold the
 Commission properly determined the Single Commissioner erred in excluding from
 evidence the medical report of Dr. Selman Watson.  We likewise hold the
 Commission did not err in relying on the report and using it as a basis to deny
 Carlsons claim for a psychological injury.  
Carlsons accident occurred on September 8, 2003.[2]  Poston sent Carlson to Dr. Watson on October 22, 2004 for a
 psychological evaluation because Carlson was claiming that he sustained a
 psychological injury as a result of his accident.  The Commission noted Poston
 stated in its Prehearing Brief that it had not received a copy of the report,
 but that it reserved the right to submit it at the hearing.  At the hearing,
 the Single Commissioner did not allow the report in after Carlson objected,
 stating it was not timely because if the report were allowed in, then he would
 have to allow additional time for the doctor to be deposed and it would
 clutter up the system.  The Commission ruled it was improper for the Single
 Commissioner not to allow the report because Carlson was on notice that Poston
 was waiting for the report, Carlson was the participant in the evaluation and
 thus was clearly aware that a report would be forthcoming, and Poston had no
 control over when the doctor issued his report.  We find no abuse of discretion
 with the Commissions determination that Carlson was on notice about the report
 prior to the hearing, as well as the Commissions consideration of the report.
Likewise, the Commission did not err in then considering this
 report as a basis for denying Carlsons claim for a psychological injury.  Although there is certainly evidence supporting
 Carlsons claims, there is contrary evidence in the record that the Commission
 relied upon to support its decision to reverse the Single Commissioners
 finding Carlson suffered a compensable psychological claim.  The Commission
 noted that Dr. Watson opined in his report of October 22, 2004 that although
 Carlson suffered from some anxiety, it does not rise to a level that would
 warrant specialized professional attention or the need for medication.  Further,
 the Commission noted Dr. Watson opined that there was reason to suspect some
 exaggeration of the claimants condition as tested by the PAI profile.  In
 addition, Dr. Watson opined the claimant suffered from a personality disorder
 that had developed over quite some time.  Because we have found no error in
 the Commissions finding that the Single Commissioner should not have excluded
 the report, the Commission properly considered Dr. Watsons opinions. 
 Accordingly, based on our limited scope of review, we hold there is substantial
 evidence to support the decision of the Commission.
2.  Denial of
 compensation for inguinal hernia (Carlsons Issue III).  We hold the Commission
 erred in reversing the Single Commissioners finding that Carlsons inguinal
 hernia was caused by his work-related accident of September 8, 2003.  Our
 holding in this regard is made with a profound appreciation of our limited and
 highly-deferential scope of
 appellate review.  Yet the concept of substantial evidence must have some
 meaning, and having carefully reviewed the record, we are convinced that the
 evidence points to the inescapable conclusion that Carlsons inguinal hernia
 was caused by his work-related accident, as found by the Single Commissioner
 and the dissenting member of the Commission.  We base this decision, in part,
 on our determination that the Commission committed a legal error in its
 characterization of the evidence.  And, as noted, substantial evidence does not
 support the Commissions decision in this regard.  See S.C. Code Ann. §
 1-23-380(A)(5)(d) & (e) (Supp. 2007) (stating an appellate court may
 reverse the Commission when its decision is affected by an error of law or is
 clearly erroneous in view of the reliable, probative, and substantial evidence
 on the whole record).  
Carlsons authorized treating physicians were Dr. Carolyn Becker
 Reynolds of McLeod Occupational Health Associates and Dr. E. Daniel Guyton of
 Florence Urological Associates.  Carlson was diagnosed with a hernia in May
 2004 and had surgery to alleviate it in September 2004.  The Single Commissioner, citing the testimony of the
 treating physicians, particularly Dr. Reynolds, concluded Carlsons hernia was
 caused by his work-related accident.  The Single Commissioner noted there was a
 delay in the diagnosis of Carlsons hernia due to the fact that he was not
 given the particular type of ultrasound that would diagnose this condition.  In
 addition, Carlson was unable to undergo the physical exam necessary to discover
 the hernia in the early stages of his injury.[3] 
 Dr. Reynolds testified that she was greater than
 ninety percent certain that this [hernia] was [incurred] as a result of his
 [Carlsons] initial injury.  The Single Commissioner observed:

 She [Dr. Reynolds] further explained that the hernia
 was not discovered after the initial injury because the injury to his scrotum
 prevented digital examination of the inguinal area and masked the hernia
 symptoms, and that the previous ultrasounds had not examined peristaltic
 movement. . . .  Dr. Reynolds was . . . adamant in her opinion that the
 September 8, 2003 injury caused Mr. Carlsons hernia.  

McLeod
 Occupational Health Associates had referred Carlson to Dr. E. Daniel Guyton of
 Florence Urological Associates for treatment of the separate injury to his
 scrotum.  Dr. Guyton diagnosed Carlson as having an injury to his left
 epididymis (spermatic cord) and gave him conservative treatment.  When Carlson
 continued to have pain, Dr. Guyton surgically removed Carlsons left epididymis
 in September 2004.  Dr. Guyton stated Carlsons work injury caused a hematoma
 to form in Carlsons left epidydimis and when it resolved, it left scar tissue
 that caused some pain.  
The
 Single Commissioner noted there was no evidence in the record that Carlsons
 hernia pre-existed his September 8, 2003 accident, and there was no evidence in
 the record of any cause other than this accident.  The Single Commissioner
 further found that Carlson was not at MMI.  
In a two-to-one decision, the Commission reversed the Single
 Commissioners finding that Carlsons inguinal hernia was a compensable injury
 caused by his work-related accident.  The Commission correctly stated that
 under section 42-9-40 of the South Carolina Code, a claimant has the burden of
 definitely proving the following:  

 (1)  That there was an injury resulting in hernia or rupture;
 (2)  That the hernia or rupture appeared suddenly;
 (3)  That it was accompanied by pain;
 (4)  That the hernia or rupture immediately followed an accident;
 and
 (5)  That the hernia or rupture did not exist prior to the
 accident for which compensation is claimed.

S.C. Code Ann. §
 42-9-40 (1985).  
In reversing the Single Commissioner, a majority of the Commission
 inexplicably stated Dr. Reynolds was unable to state to within a reasonable
 degree of medical certainty that the claimants hernia in May of 2004, was the
 result of his work injury on September 8, 2003.  This purported finding simply
 finds no evidentiary support in the record.  This alleged uncertainty on
 Dr. Reynolds part is a mischaracterization of her testimony.  Dr. Reynolds
 expressly testified that she was greater than ninety percent certain that this
 [hernia] was [incurred] as a result of his [Carlsons] initial injury.  She stated it had gone undiagnosed and was the
 missing piece of the puzzle as to what was causing Carlsons continuing pain.     
Although the Commission was free to disbelieve Dr. Reynolds
 testimony, it did not specifically find that her testimony was lacking
 credibility or reject it as otherwise flawed.  Rather, the Commission asserted
 that she failed to state an opinion to within a reasonable degree of medical
 certainty.  We believe this mischaracterization of the testimony is legal error
 that affected the result in this case.  Cf. Seaboard Sys. R.R., Inc.
 v. Pub. Serv. Commn, 290 S.C. 275, 349 S.E.2d 896 (Ct. App. 1986)
 (recognizing the general principles that the Public Service Commission as an
 agency was responsible for determining the credibility of witnesses and that it
 was not required to accept testimony even if it were uncontradicted, but
 holding these principles are not applicable in the instant case because the
 Commission did not indicate anywhere in its order that it rejected the evidence
 presented by Seaboard as not credible; the appellate court concluded the
 Commissions decision was not supported by substantial evidence). 
Moreover, the Commission based its finding, in large part, on the testimony
 of Dr. Guyton, who treated the injury to Carlsons epididymis.  The Commission
 stated, Importantly, Dr. Guyton testified . . . the claimant could have
 sustained another accident which led to his hernia condition.  Upon reviewing
 his testimony, we note Dr. Guyton acknowledged that he did not diagnose
 Carlsons hernia, did not treat him for a hernia, and he did not know when
 Carlson sustained his hernia.  Dr. Guyton stated the hernia could have been
 caused by his work-related accident or it was possible that Carlsons hernia
 was incurred after Carlsons 2003 accident.  Dr. Guyton explained that
 sometimes hernias are more subtle and it takes somebody with more expertise in
 dealing with hernias to determine whether that is, you know, symptomatic or not
 [and] whether the pain you are having is a hernia or not.  When asked about when Carlsons hernia developed, Dr.
 Guyton stated that he would have to defer to general surgery [sic] who does
 hernia. More to the point, Dr. Guyton made it crystal clear that
 his treatment of Carlson was unrelated to the hernia, for Dr. Guyton does not
 specifically treat hernias in his practice.  
We do not fault the Commission for assigning weight to the
 testimony of Dr. Guyton in its quest to deny compensability for Carlsons
 hernia.  Our concern is with the complete lack of a nexus from the Commissions
 findings and the actual evidence.  To be sure, the Commission is free to make
 findings, but those findings must have at least a slight connection to the
 evidentiary record.  Findings made from whole cloth cannot meet the minimal
 substantial evidence threshold.  Moreover, we are mindful that Dr. Guyton, when
 pressed, speculated that it was possible that Carlson may have sustained
 another injury.  If such speculative testimony were found to be sufficient, the
 already thin concept of substantial evidence would be an empty shell.  Here,
 the only evidence to within a reasonable degree of medical certainty is that of
 Dr. Reynolds, whose testimony the Commission mischaracterized.  Because the
 only basis for the Commissions decision rests on speculation, and
 concomitantly the evidence allows reasonable minds to only reach the conclusion
 that Carlsons hernia was caused by the work related accident, we reverse the
 Commission.[4] 
Accordingly, based on the foregoing, we hold the Commission
 erred.  See Grant v. Grant Textiles, 372 S.C. 196, 202, 641
 S.E.2d 869, 872 (2007) (While the appellate courts are required to be
 deferential to the full commission regarding questions of fact, this deference
 does not prevent the courts from overturning the full commissions decision
 when it is legally incorrect as it is here.); Thompson v. S.C. Steel Erectors, 369 S.C. 606, 612, 632 S.E.2d 874, 878 (Ct.
 App. 2006) (stating under the APA an appellate court may reverse the
 Commissions decision if the claimants substantial rights have been prejudiced
 because the decision is affected by an error of law or is clearly erroneous in
 view of the reliable, probative, and substantial evidence on the whole record).
3.  Finding that
 MMI was reached by May 2004 (Carlsons Issue IV).  Carlson lastly challenges
 the Commissions determination that he reached MMI by May 2004.  The Commission
 concluded Carlson reached MMI after finding Carlsons hematoma had resolved
 itself by May 2004 and that Carlsons causally-related injuries did not include
 a hernia.  Since the Commission affirmed the Single Commissioners finding that
 Carlson had also suffered an injury to his epididymis, and Carlsons treatment
 for this injury occurred after May 2004, the Commission erred in finding
 Carlson had reached MMI by May 2004.  In addition, since we are reversing the
 finding regarding Carlsons inguinal hernia and hold that it is compensable,
 the finding of MMI must be revisited.  Accordingly, we reverse the Commissions
 finding in this regard and remand this matter to the circuit court, which shall
 direct the Commission to reconsider the issue of MMI.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
HUFF, KITTREDGE, and WILLIAMS, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.
[2]  Documents in the record on appeal also give the date
 of the accident as September 9, 2003.
[3] Dr. Reynolds testified that there were basically two
 reasons why the hernia was not diagnosed after [Carlsons] September 2003
 incident.  One is that the concentration was on the scrotal and the testicular
 injury and the other would be that the ultrasound was not performed in a way
 that the hernia would be revealed[.]  Dr. Reynolds further stated Carlson
 could not be given a proper physical exam to detect the hernia in the earlier
 stages of his injury.  There is no evidence to contradict these findings.
[4]  Essentially, the Commission
 committed legal error in stating Dr. Reynolds failed to testify to within a
 reasonable degree of medical certainty about causation, even though she stated
 she was greater than ninety percent certain that the work-related accident
 caused Carlsons hernia.  We believe Dr. Reynoldss testimony meets the level
 of certainty required for medical causation.  Further, the Commission
 extensively relied upon the testimony of Dr. Guyton, even though he was unable
 to testify to a reasonable medical certainty about the cause of Carlsons
 hernia and in fact stated he could not ascertain the cause of Carlsons hernia
 because he did not treat him for that condition and would have to defer to the
 expertise of others.